May Term,
1844.

Cook
v.
The State.

Saturday,
June 15.

COOK *v.* THE STATE.

An indictment for a capital offence cannot be found in a Circuit Court in the absence of the president.

ERROR to the *Franklin* Circuit Court.

DEWEY, J.—This was an indictment for murder found at a term of the *Franklin* Circuit Court, held by the two associate judges in the absence of the president, by a grand jury impanelled, sworn, and charged by the Court so composed; to which Court the indictment was returned, and by whom it was received and recorded. At a subsequent term held by a full Court, the defendant was arraigned, tried, found guilty, and sentenced to death. Motions in arrest of judgment, and for a new trial, were overruled. Among the errors assigned is the following:

That a Circuit Court, consisting of the two associate judges only, is not competent to impanel, swear, and charge the grand jury in respect to a capital offence, and to receive an indictment for it.

The question raised by this objection is, independently of its connection with the life or death of an individual on the present occasion, one of an important nature. It involves the construction of our constitution in one of its most interesting features. It is now for the first time presented for the consideration of this Court, and has never, so far as we know, received the adjudication of any of the Circuit Courts. We have given it mature deliberation, and, with but slight assistance from authority, have come to a conclusion satisfactory to our own minds.

The third section of the fifth article of the constitution, after declaring that each Circuit Court shall consist of a president and two associate judges, provides that " the president and associate judges, in their respective counties, shall have common law and chancery jurisdiction, as also complete criminal jurisdiction in all such cases, and in such manner, as may be prescribed by law. The president alone, in the absence of the associate judges, or the president and one of the associate judges, in the absence of the other, shall be competent to hold a Court, as also the two associate judges, in the

absence of the president, shall be competent to hold a Court, except in capital cases, and cases in chancery."

The statute organizing Circuit Courts, in force when this indictment was found and tried, vested those Courts with complete civil and criminal jurisdiction not inconsistent with the constitution. R. S. 1838, p. 161.

No one will controvert the position, that a grand jury cannot find an indictment for any offence, over which the Court to which the jury belongs has not cognizance. This is conceded by the counsel for the state ; but it is contended that the constitution has delegated to the Circuit Court, when held by the two associate judges, general jurisdiction in all criminal cases, by empowering them to hold a Court ; and that the restriction on their power contained in the exception does not reach to that portion of their jurisdiction, under which the grand jury is impanelled, sworn, and charged, and under which the indictment is returned into Court ; but that it only restrains them from proceeding further with the cause after the indictment is returned.

This interpretation is founded upon the meaning, which those who hold to it give to the word *cases* as used in the exception in respect to proceedings for a capital offence. It is contended that *case* as there employed is synonymous with prosecution, (which, according to the definition of *Blackstone*, is the commencement of a criminal suit by the indictment,) and that it does not include the proceeding prior to the indictment. We cannot bring ourselves to concur in this construction. The same word *cases* is used as well in that part of the constitution which confers jurisdiction generally upon the Circuit Courts, as in that which restricts it when exercised by the associate judges only ; and we cannot suppose that the framers of the constitution designed to use it in the same paragraph, and in relation to the same general subject, in different senses. The Circuit Courts, whether held by all the judges, by the president alone, by the president and one associate judge, or by the two associates, have unlimited criminal jurisdiction "in all such *cases*, and in such manner, as may be prescribed by law," except that the associate judges shall not hold a Court "in capital *cases*." If this word, as used in the first instance, was de-

signed to embrace (as undoubtedly it was) all the stages of
criminal proceedings from the impanelling of the grand jury
to the execution of the final sentence, we know of no rule of
criticism by which it must not embrace the same proceed-
ings, when designating the crimes over which a Court held by
the associate judges shall not have jurisdiction. In our opin-
ion the Circuit Court, so held, has no more power to im-
panel, swear, and charge a grand jury, and receive an indict-
ment for a capital crime, than it has to try the cause and
pronounce sentence.

But were it admitted that *case*, as the word is used in the
restricting clause, means a prosecution commencing with the
return of the indictment, our views with regard to the juris-
diction of the associate judges holding a Court would not be
changed. If such a Court could receive the indictment, the
*case*, or prosecution, would be commenced before it. The
associate judges would still hold a Court in a capital *case*,
and thus the very letter of the constitution would be violated.
Much more would the spirit of that instrument be disre-
garded, by permitting a Court so composed to exercise that
branch of jurisdiction which is preliminary to the finding of
the indictment—a jurisdiction involving the right and the
duty of judging of the qualifications of grand jurors when
challenged, of defining capital crimes, and of expounding the
various principles of law which should govern the indictors
in putting a man upon the defence of his life. We cannot
believe that those powers have been conferred upon the asso-
ciate judges.

A case somewhat analogous to this occurred in *Massachu-
setts*. By one part of a statute of that commonwealth, one
of the judges of the Supreme Judicial Court was authorized
to hold a Court with ample and plenary criminal jurisdiction;
but another part of the same statute provided, that an indict-
ment for a capital offence should not " be heard, tried, and
determined," unless three judges were present. It was held,
that the restriction did not affect the jurisdiction of the sin-
gle judge as to the impanelling the grand jury in a capital
case, and receiving and recording the indictment; but that
the prisoner could not be arraigned without the presence of
three judges. The decision turned upon the ground, that

May Term, 1844.

general jurisdiction was given to one judge in all criminal cases, and that the restriction upon his power was, in terms, confined to the hearing, trying, and determining of the indictment, which included the arraignment. *Commonwealth* v. *Hardy*, 2 Mass. R. 303. It is evident from the remarks of C. J. *Parsons*, who delivered the opinion of the Court, that, had the language restricting the jurisdiction of the judge in capital cases been as general as that which conferred jurisdiction generally over all crimes whether capital or not, as is the case in our constitution, the decision would have been that a legal indictment for a capital offence could not have been found before him.

Various errors were assigned which we have not noticed, because it is not likely that the same points will arise in a trial of the defendant on a valid indictment.

*Per Curiam.*—The judgment is reversed, and the proceedings subsequent to the indictment set aside. Cause remanded with instructions to the Circuit Court to quash the indictment, and to retain the prisoner in custody to answer to another indictment for the same offence.

*J. M. Johnston*, for the plaintiff.

*J. Ryman*, for the state.