*C. Baker* and *J. W. Foster*, for appellees.

---

BRADFORD *v.* THE STATE.

The proper construction, in ordinary cases, of 2 R. S., § 84, p. 372 is that the parties must avail themselves of the right to examine and challenge jurors either peremptorily or for cause.

Nov. Term,   If a person called as a juror is challenged for cause, the Court, after hearing
1860.        the examination, &c., should exercise a sound, legal discretion in determin-
             ing his competency.
BRADFORD
    v.       An opinion based upon mere rumor, not from a knowledge of the facts, from
THE STATE.       hearing evidence, or from conversing with witnesses, unless firmly fixed,
                 is not cause for a challenge.

Where the evidence as to the competency of a juror, because of previously
    formed or expressed opinions as to the guilt of the accused, is conflicting,
    the decision of the Court below will be respected in like manner as in
    the case of trials of issues of fact in civil cases.

Affidavits of jurors may be received to sustain but not to impeach their
    verdict.

Under 2 R. S., §§ 1 and 2, p. 24, a freeholder, merely, is not competent
    to sit upon a petit jury. He must be a householder.

Where it does not appear in the record whether the jurors who tried the
    cause were or were not competent, their competency will be presumed.

*Thursday,*        APPEAL from the *Vigo* Circuit Court.
*December* 13.
                   HANNA, J. — Indictment for murder. Plea not guilty.
Trial: verdict of guilty, and that the prisoner suffer death.

The points presented are in reference to the competency of
jurors who sat on the trial of the case.

It is urged that two jurors, *Brown* and *Miller*, were
incompetent, because of previously formed and expressed
opinions as to the guilt of the defendant.

It is denied by the State that *Miller* formed or expressed
an opinion. It is admitted that *Brown* had; but insisted that
it was from rumor merely, and not from hearing the evidence,
or from a knowledge of the facts.

Affidavits and counter affidavits were received as to the
alleged incompetency.

*Moffat* and *Drake*, attorneys for appellant, state that each
of said jurors were examined as to whether they had formed
or expressed an opinion, &c., and that each answered that he
had not, and for that reason they were accepted upon the
jury.

*Baily* states that on the day defendant was being brought
to *Terre Haute* on the cars, witness told *Brown* the circum-
stances and facts that led to his arrest, and *Brown* said he
ought to be hung. *Brown* was shown to be the editor of a
newspaper, and an article shown to have been written and

Nov. Term,
.1860.

BRADFORD
v.
THE STATE.

published by him, was put in. *Grubbs* and *Lee* swear to having held conversations with *Miller* on the day of the preliminary examination of defendant at the court house in *Terre Haute*, *Grubbs* before and *Lee* after the same, in which he expressed the opinion that defendant ought to be hung, or ought to be taken out and hung.

*Brown* swears that he did not, upon the question being propounded to him, answer that he had not formed an opinion; but that he had formed an opinion from rumor; was not present at the examination, and had not heard the evidence, and was told by *Moffatt* to take his seat in the box.

*Allen*, one of the jurors, swears that he heard the question put to *Brown*, and particularly observed his response, which was in substance, that he had not formed or expressed any opinion, only from rumor; that he had published rumors of the transaction, but not his individual opinion; that some fifty persons were examined as to their competency, &c.

*Persons*, an excused juror, swears that his attention was particularly directed to *Brown's* answer, which was that he had not formed or expressed an opinion of the guilt or innocence of the defendant, only from rumor; had published some account of the preliminary trial, but was not present at it. *Moffatt* accepted *Brown*, or told him to take his seat.

*Miller* swears that he stated, in response to the question, that he had heard some flying reports, but had not heard the evidence, &c.; that he was not present at the examination before the committing magistrate, nor was he at the court house on that day; that he does not know *Grubbs*, did not see him on the day of the examination, nor say to him, or to any other person, that defendant ought to be hung; that he had not formed or expressed an opinion, nor had he ever seen said *Bradford* until he was brought into Court for trial.

*Purdy* states that the preliminary examination closed about half past five o'clock in the afternoon.

*Burton* and *Reiss* state that *Miller* was with them at the *America* Saloon from four o'clock, or a little later, until after night of the day of the preliminary examination.

We have examined the article published by *Brown*, and

can not perceive that there is any expression of opinion of guilt or innocence in that transaction; but there is a general expression as to the appearance, bearing, and physiognomy of the defendant.

It is argued that, under our statute, a juror who has formed or expressed an opinion as to the guilt or innocence of a person charged with crime, is incompetent to sit as a trier; totally and absolutely so. And it is earnestly urged that the statute is, in that respect, different from others anterior thereto, and that it precludes the Court from the exercise of any discretion in accepting or rejecting a juror, who states that he has formed or expressed an opinion; and that it matters not as to the source from which the information upon which the opinion was so formed was derived.

The section of the statute upon which this conclusion is based is as follows:

"SEC. 84. When the jurors are called, each may be examined on oath by either party, whether he has formed or expressed an opinion of the guilt or innocence of the defendant; and upon such examination and other questions put by leave, the court may determine upon the competency of the juror. Any juror is incompetent who has formed or expressed an opinion of the guilt or innocence of the defendant." 2 R. S., p. 372.

It is insisted that the last sentence of the section is a positive declaration of the legislative will as to the competency of jurors.

It appears to us that the whole section should be considered in construing any part of it, just as all parts of a statute are examined in giving a construction to any particular portion thereof. Viewed in that light, it would seem as if the examination might be waived by the defendant, indeed, by the parties; and the Court might then, without any examination, direct them to be sworn as jurors to try the case. If this should take place, we can not believe that, unless something extraordinary should be developed, the Court would set aside the verdict, upon the fact being shown that a juror or jurors had formed and expressed opinions, &c. In our opinion the proper construction to be placed upon this statute is, that, in

ordinary cases, the parties must avail themselves of the right
to examine and challenge jurors, either peremptorily or for
cause; if for cause, the Court, after hearing the examination,
&c., exercises a sound, legal discretion in determining as to
the competency of the juror. One of the disabilities of a
person called is the formation or expression of an opinion,
&c. It is so declared by the statute. The legal doctrine
thus embodied in the statute had always been acted upon
in practice in this State. To determine whether the sound,
legal discretion vested in the judge, has been abused or prop-
erly exercised, we must, in each instance, examine the ques-
tion whether the opinion of the person offered had been
formed upon such information, or information derived from
such a source, as would probably make such an impression as
might influence him, after hearing the facts detailed on the
trial. In determining this question, the Court below, and this
Court, should be governed by the legal rules applicable in
such case, and which have obtained in reference to like cases,
before the enactment of the statute.

An opinion based upon mere rumor, not from a knowl-
edge of the facts, from hearing evidence, or from conversing
with witnesses, unless firmly fixed, has been repeatedly held
to be no cause for a peremptory challenge, before the passage
of this statute. *McGregg* v. *The State*, 4 Blackf. 101; *Van
Vacter* v. *McKillip*, 7 *id.* 578; and since its passage,
*Morgan* v. *Stevenson*, 6 Ind. 169; *Rice* v. *The State*,
7 *id.* 336.

We see nothing in the circumstances of this case to justify
us in departing from these salutary rules.

If this statute should receive the construction contended for
by the appellant, and parties should, without examination,
accept a jury the members of which, it should afterward be
shown, had formed an opinion, a very serious question might
be raised as to whether a man had been placed in jeopardy,
at all, who had been tried and acquitted by such jury; .for,
according to the conclusion of the appellant, it would not be
a jury that could legally pass upon the case.

The affidavits and exhibits presented to the Court, upon
the alleged incompetency, raised questions of fact for the

determination of that Court. We are not prepared to say, in view of the doctrines above advanced, and the rules of evidence which have been heretofore adhered to, as to the admission of testimony in like cases, that the decision of the Court upon those questions was erroneous.

Two men testify that *Brown* stated positively he had not formed or expressed an opinion, &c. *Brown* and two others are equally as positive that his answer was in accordance with his statement in his affidavit. Many persons were examined upon the point of competency, and, possibly, that may account for the misunderstanding as to the answer of the juror. In addition to all this, the judge who decided the motion for a new trial, had heard the examination as to the competency of the juror.

As to *Miller*, there is no dispute about his answer to the question. The point raised was as to the truth of that answer. Two persons, *Grubbs* and *Lee*, swear to conversations with him; both locate the same at the court house; the former, at the adjournment of the examination from the forenoon until the afternoon, and the latter, after the examination was over. *Miller's* affidavit is directly contradictory to these two, not only as to the conversations, but he declares he was not, on that day, at the court house, never saw the prisoner before, &c., and did not know *Grubbs*. To support him, *Purdy* swears that the examination closed about half after five; *Reiss* and *Burton* that, at that hour, they were with him at another place. *Lee* does not state whether he was acquainted with *Miller* or not; *Grubbs* states he was not.

It was for the Court below to sift these apparent contradictions; reconcile them, if possible, and to determine as to the truth in reference thereto.

We can not see, under the repeated rulings in reference to findings on questions of fact, that the finding in this case can be reversed by us. *Romaine* v. *The State*, 7 Ind. 67.

In this connection we might say, in regard to the objection made, that although the affidavits of jurors can not be received to impeach, yet they may be to sustain, their verdict.

It may be further remarked, that the affidavits filed in behalf of the defendant do not negative knowledge of affiants

of the matters of which they complain; nor is there any affidavit of the defendant, himself, as to that point. For aught that appears in the record, he might have been fully cognizant of all the facts, before trial, upon questions now presented as to the competency of jurors. See *Barlow* v. *The State*, 2 Blackf. 114; *Rogers* v. *Lamb*, 3 *id.* 155; *Lisle* v. *The State*, 6 Missouri, 430.

It has been suggested that a question arises upon that portion of the record, in regard to empanneling the jury. The record states, that to "try the issue herein, there comes a jury, to wit, &c., twelve lawful jurors, reputable householders or freeholders of the county of *Vigo*, who being elected, tried, and sworn," &c.

No objection or exception appears, to the empanneling or swearing these men as jurors. Our statute provides that at a specified time, certain county officers shall "write, on separate slips of paper, the names of one hundred reputable male householders, competent to serve as jurors," &c. The same section then prescribes the manner in which such slips shall be deposited in, and drawn from, a box, to the number of twelve. The second section, after providing for summoning the persons drawn, and for calling them on the first day of the term, makes it the duty of the Court, upon the non-appearance of any so summoned, to "cause the sheriff to summon other reputable householders of the county to supply the deficiency." 2 R. S., § 2, p. 24.

That a man may be a freeholder and not a householder, or a householder and not a freeholder, is a proposition so plain as to need no argument. A householder is the occupier of a house—a housekeeper, master of a family. Jacob's Law Dict., vol. 3, p. 350. The master of a house or family. Bailey. The master or chief of a family, one who keeps house with his family. Webster. A man may be all these, and yet not the owner of the soil. A freeholder is such as holds a free-hold estate, that is, lands or tenements, in fee simple, fee tail, or for term of life. Jacob's Law Dict., vol. 3, p. 139. A person who is the owner of a freehold estate, which is an estate in lands or other real property, for the life of the tenant or that of some other person, or for some uncertain

period. Bouvier's Law Dict. An estate of inheritance, or for life, in real property. 4 Kent, 24. The possession of the soil by a freeman. Black. Com. 2 Book, p. 104.

So, it is obvious, a man may be a large freeholder, and yet not a householder. The Legislature has designated the class of citizens from which petit jurors shall be drawn, to wit: householders; and also the classes from which grand jurors shall be selected, to wit: freeholders or householders. 2 R. S. 1852, § 1, p. 387.

Courts have no more power to say that other classes than householders, shall be received upon petit juries, than to exclude householders, because they are such, from grand juries. With the policy of legislation upon this point, we have nothing to do; but it is clear that, under this statute, a freeholder, merely, is not a competent juror, to sit upon a petit jury. He must be a householder.

The next question, and the most difficult one, is, whether the record should show affirmatively that the jurors were all householders, and whether the question can be taken advantage of by a defendant, who has failed, in any form, to place upon the record, in the Court below, his objection to the triers who were thus empanneled. Upon this point, the authorities are meager.

*Cook* v. *The State*, 7 Blackf. 165, was a case in which an indictment was returned by a grand jury, at a term of the Court held by the associate judges, in the absence of the president judge. Under the then Constitution, the two associates, in the absence of the president, were competent to hold a Court, except in capital cases, and cases in chancery. The opinion does not show that any motion was made to quash the indictment; but motions were made for a new trial, and in arrest. Of course, the indictment did not show what judges were present at the finding thereof; but other portions of the record did. The order of this Court, to the Circuit Court, was to quash the indictment, and to retain the prisoner in custody, to answer to another indictment for the same offense. The record showed that he had been tried by a full Court, and sentence of death passed upon him. The whole proceeding must, therefore, have been treated as a

nullity, or mis-trial, because of the incompetency of the asso-
ciate judges to hold a Court at any stage of a capital case.
Why were they not competent? Because the fundamental
law fixed their duties and powers. So the statute prescribes
the persons who shall be jurors, grand and petit.

The doctrine is laid down in Wharton's Crim. Law, p. 1041,
that " A new trial will be granted, at common law, where it
appears, after verdict, that some one of the jurors should not
have been permitted to sit upon the trial, on account of an
entire legal incapacity; as where it is discovered that one of
the jurors is not a freeholder, or had been taken from the
debtors' prison for the purpose, or was an infant."

. In the case of *The Queen* v. *Sullivan*, 8 Adolph. & E.
831, it was held, that there was no error in overruling a
motion for a new trial based upon the fact, that one of the
jurors who tried the case had also been of the grand jury
that found the indictment, as was disclosed after the jury
was sworn. Upon that disclosure having been made, the
defendant had refused to agree to the discharge of the juror.

So, in the case of *The King* v. *Sutton*, 8 Barn. & Cress.
417, after a verdict against the defendant, it appeared, by an
affidavit, that one of the jurors who had sat upon the trial
was an alien, and that the fact was not known until after the
trial. An act of Parliament provided, "that no man, not
being a natural born subject of the king, is or shall be quali-
fied to serve on juries," &c. It was held, that this was a
ground of challenge to the juror, and that the party having
had an opportunity to make the challenge, and having failed
to do so, a new trial should not be granted. See 5 Ind. 172;
7 *id.* 63.

So, in *Lisle* v. *The State*, 6 Missouri, 430, it was held, that,
although the juror might be incompetent, yet if that incom-
petency was known to the defendant before trial, and he
consented to take him, he can not avail himself of that as an
objection, &c.

In that case, it was shown, on the motion for a new trial, that
the juror had expressed an opinion that the defendant ought
to be hanged. It appeared that he had, when sworn and
questioned as to his competency, stated that he had formed

Nov. Term, 1860.

BRADFORD
v.
THE STATE.

and expressed an opinion, but that such opinion was founded on rumor merely.

So, in *Horsey* v. *The State*, 1 Harr. & John. R. 2, the defendant was found guilty of murder, and on a motion in arrest of judgment, the tenth reason assigned was, "it should appear by the record that the jurors were freeholders, which does not appear."

The judgment was affirmed by the Court of Appeals of *Maryland*, without any reason being given therefor. We are, therefore, not apprized of the grounds upon which the ruling was placed.

It will be observed, that none of the cases cited are precisely in point, unless it may be that of *Horsey* v. *The State*. In some of them, it appeared affirmatively that the tribunal had no jurisdiction; in others, the objection did not arise until after verdict, and was then made affirmatively to appear. In the case at bar, it does not appear whether the jurors were or were not competent, under the statute. In other words, it does not, by a direct averment, appear that they were not householders. Presumptions and inferences should not be indulged against a person charged with an offense under our criminal law; nor should presumptions and inferences be indulged against the action of a Court of competent jurisdiction. As it does not appear affirmatively by the record of the impanneling of the jury, nor was it made to appear in any other manner, that the jurors who tried the case were not competent, we will not presume that they were not; and the defendant having accepted them without objection, is bound by that acceptance, under the circumstances of this case.

*Per Curiam.*—Judgment affirmed.

*B. B. Moffatt*, for appellant.

*W. March* and *I. N. Pierce*, for the State.