Guetig v. The State.

---

GUETIG v. THE STATE.

CRIMINAL LAW.—*Competency of Juror.*—*Opinion formed from Newspaper Report.*—On the examination of jurors empanelled to try the defendant in a criminal prosecution, a juror answered that, from the evidence given on a former trial of the same prosecution, as reported in a newspaper and read by him, he had formed and expressed an opinion on the merits of the case, to change which would require some evidence, but which would readily yield thereto.

*Held,* that the juror was competent.

SAME.—*Insanity.*—*Hypothetical Question.*—*Expert.*—A hypothetical question, put to a medical expert to obtain his opinion as to the sanity of a defendant, must be based upon facts admitted, proved or assumed, but need not be based on all of such facts.

SAME.—*Relative Strength of Presumptions of Sanity and Innocence.*—*Instruction.*—An instruction stating that "the presumption of innocence is so far of greater strength than" the presumption "of sanity, that, when evidence appears tending to prove insanity, it compels the prosecution to establish, from all the evidence, mental soundness beyond a reasonable doubt," is erroneous, but can not be complained of by the defendant.

SAME.—*Frenzy.*—The defendant can not complain of an instruction stating that "Frenzy arising solely from the passions of anger and jealousy, no matter how furious, is not insanity." See opinion for instructions held correct.

SAME.—*Presumptions.*—An instruction in such case stated that "the law presumes that a man is of sound mind, until there is some evidence to the contrary. * * * An accused is entitled to an acquittal, if the evidence engenders a reasonable doubt as to the mental capacity at the time the alleged offence is charged to have been committed. Evidence ⁂ tending to rebut the presumption of sanity need not, to entitle the defendant to an acquittal, preponderate in favor of the accused. It will be sufficient if it raises in your minds a reasonable doubt."

*Held,* that the instruction was correct.

SAME.—*Opinion of Medical Expert.— Weight of.*—It was proper to instruct the jury, that, while they should consider the opinions of medical experts in connection with all the other evidence, they were not bound to act thereon to the exclusion of other testimony, but should determine the question of sanity from all the evidence. And that such an opinion "based upon a hypothesis" which is "wholly incorrectly assumed, or incorrect in its material facts to such an extent as to impair the value of the opinion, is of little or no weight."

SAME.—*Marion Criminal Circuit Court.— Constitutional Law.*—The act establishing the Marion Criminal Circuit Court is constitutional.

From the Marion Criminal Circuit Court.

*J. L. Griffiths, A. F. Potts, J. W. Gordon, R. N. Lamb* and *S. M. Shepard,* for appellant.

*T. W. Woollen,* Attorney General, *J. B. Elam,* Prosecuting Attorney, *J. S. Duncan, C. W. Smith* and *R. B. Duncan,* for the State.

BIDDLE, J.—Louis Guetig was indicted for the murder of Mary McGlew, convicted, and sentenced to death. He appealed to this court. The judgment was reversed for an error in the lower court, and the cause remanded for a new trial. *Guetig* v. *The State,* 63 Ind. 278. Upon a second trial he was again convicted, and is now again under sentence of death. By appeal from the second judgment the appellant brings before us, for our decision, the following questions :

1. Errors committed by the court below in overruling defendant's challenge to each of three jurors, namely: Richard Hill, Thomas J. Hinesly and James E. Twiname ;

2. Error committed by the court below in overruling

the defendant's objection to the hypothetical cased stated, and question put thereon, to each of the medical expert witnesses called to testify in behalf of the State;

3. Error committed by the court below in overruling each of the instructions and charges moved and requested to be given by the court to the jury, by and on behalf of the defendant, and in refusing to give each of the same;

4. Errors committed by the court below in giving each of the several instructions and charges given by the court to the jury as and for the law of the case, when it was not the law, nor applicable to the case;

5. The transcript of the record of the proceedings and judgment of the court below do not show any authority in the Hon. Byron K. Elliott to hold said court, preside therein, or to try said defendant in said action; and,

6. There is no such court in the State of Indiana, and never was such court therein, as the Marion Criminal Circuit Court.

1. It is insisted that the court below erred in overruling the defendant's challenge to each of three jurors, namely: Richard Hill, Thomas J. Hinesly and James E. Twiname.

The examination of these jurors upon the *voire dire* is made part of the record by bill of exceptions, which makes substantially the following case against each:

1st. Richard Hill, who is admitted to be a fit juror, if his opinions did not disqualify him, when examined, stated that "he had heard of the case; but was not acquainted with defendant, or deceased, or her relations." He thought he first saw about the case in the Daily Sentinel; that it was simply an account of the occurrence in the papers that he read—an account of the former trial—what the parties had seen—the account set forth—the testimony of the witnesses; and he said "that he thought he probably did, from that information, form an opinion."

Guetig *v.* The State.

It was thereupon objected to the juror that he was incompetent because he said that he had based an opinion upon the testimony of witnesses in the former trial.

He was thereupon examined, on behalf of the State, as follows:

"Is your opinion so fixed in your mind that it would not yield readily to the evidence introduced here, and so that you could not readily try the case as fairly and impartially as if you had never heard of it before?" To which he answered: "No; I can not say that it would. If the evidence should differ from what I have heard of it, I think I would have to be governed by the evidence."

By the Court: "Would it require any effort on your part to allow the evidence to govern your opinion?" Answer: "I do not think it would."

By Mr. Potts, for the defendant: "If the evidence should correspond to what you have heard, then I presume you would be governed by the original opinion you had formed?" Answer. "I think I should." "Would you, in regard to the question of guilt or innocence, and also in regard to the question of punishment to be inflicted upon the defendant in case of conviction?" Ans. "Well, it might have something to do with it." Ques. "In both cases?" Ans. "Yes, it might."

For the State: "But if it should differ from what you heard, then it would be as if you had never before heard of the case?" Ans. "I do not think but what it would require but very little evidence to turn my opinion."

"The defendant challenged the juror for cause, in that the said Hill was not competent to sit as a juror in the case, in that he had formed and expressed an opinion as to the guilt or innocence of the defendant, and could not try the case as impartially as if he had never heard of the case before."

The challenge was overruled by the court, and the defendant at the time excepted.

2d.   Thomas J. Hinesly, upon his examination on the *voire dire*, stated his name, and that he resided in Washington township, Marion county, Indiana, and had, for forty-three years; and, upon a general statement of the case to him, he had said, that "he had formed or expressed an opinion of the guilt or innocence of the defendant; that he had formed such an opinion from the papers. He then said he saw a report of the coroner's inquest, and a part. of the report of the proceedings of the preceding trial here, in the Journal and People;" that "he formed an opinion as to what punishment should be inflicted if the defendant was guilty;" that "his opinion was so fixed in his mind, that it would require some evidence to remove it; yes, sir, it would;" that "he would not feel quite so free to try the case impartially and fairly, as he would if he had not heard of it;" and that "it would take some evidence to change his opinion in regard to the punishment to be inflicted.   Yes."

By the State :   "Would your mind yield readily to the evidence, or is your opinion fixed so that it would not readily yield ?"

Defendants' counsel objected to the question on the ground that it was incompetent, in that it called for the witness' opinion, or rather the person's being examined, as to the effect that certain evidence would have on his mind, or would probably have on his mind.   The objection was overruled by the court, to which ruling the defendant at the time excepted.

The juror answered :   "It's not firmly fixed.

"You think you can sit here and try the case upon the law and the evidence as you should hear them in the court-room ?

"I think I can.

"You think the impression you now have upon your

mind would have no effect upon your final verdict, after having heard the law from the court, and the evidence from the witnesses?

"I think not."

By Major Gordon of defendant's counsel; "You think your opinion would not be any obstruction—in other words you would try to get rid of it?

"Yes, sir.

"But are you quite certain that you could do so?

"I think I could."

Thereupon the defendant interposed challenge for cause, upon the ground that said Hinesly is "incompetent as a juror in this case, by reason of his having formed and expressed an opinion in this case touching the guilt or innocence of the accused, which would be an obstruction to his mental operations, which it is impossible for either himself or the court to say that he can by any possible effort of the will rid himself of it."

The challenge was overruled by the court, to which ruling the defendant at the time excepted.

3d.   James E. Twiname, one of the jurors, on his *voire dire*, answered substantially as follows :  " He resided in the city, and had for seven years; expected he had formed or expressed an opinion of the guilt or innocence of Louis Guetig, the defendant, and thought it would require evidence to remove it."  And in answer to the question, " You would not feel so impartial then between the State and defendant as if you had no opinion at all?" he said, "It would take some evidence to remove the opinion." Then the question:   "And if the evidence ran in the same direction as your preconceived opinion, it would then require a little less evidence to convince your mind, would it not?" He said, " I do not know; I think I could try the case impartially." He had not been on a jury during the last twelve months.  He was asked : "And, notwithstanding your opinion, you think you could try the case im-

partially?" and answered, "My mind might possibly be a little biased."

"And, however just and impartial you might determine to be, there would be that much difference between your mind in its present state and the mind of a person who had never heard of the case, and who had never formed an opinion about it?" "That may be possible."

By the Court:

"Would the opinion of which you have spoken yield readily to the evidence as delivered by the witnesses, and could you, notwithstanding such opinion, give the defendant a fair and impartial trial?"

Question objected to by Major Gordon, because it asked for the juror's expression of opinion as to his mental condition, and his power to lay aside a preconceived opinion upon evidence to be heard.

Juror's answer: "I think I would let the evidence govern."

The defendant then challenged the juror as incompetent, in that he had formed and expressed an opinion in regard to the guilt or innocence of the defendant, which would require some evidence to remove it. The objection was overruled by the court, to which ruling the defendant at the time excepted.

The counsel for appellant base their objections to the competency of the above jurors mainly upon what they claim to be the fair interpretation of section 84 of the code of criminal pleading and practice. 2 R. S. 1876, p. 393.

It is in these words: "When the jurors are called, each may be examined on oath by either party, whether he has formed or expressed an opinion of the guilt or innocence of the defendant, and upon such examination and other questions put by leave, the court may determine upon the competency of the juror. Any juror is incompetent who

has formed or expressed an opinion of the guilt or innocence of the defendant."

They also insist that the authorities support their views.

The enactment of the code of 1831 upon this subject was as follows:

"Sec. 93. That on the trial of any person accused of any offence against the laws of this State, it shall be lawful for a defendant or the court, to require jurors to answer on oath, whether they have formed or expressed an opinion, relative to the guilt or innocence of such accused person, and from the answer to such question and to such others as may be asked by the permission of the court, the competency of such jurors shall be determined upon by the court." R. S. 1831, pp. 197, 198.

This section was re-enacted, in the same language, in the code of 1838. R. S. 1838, p. 222, sec. 93. It was also re-enacted in the code of 1843, R. S. 1843, p. 995, sec. 57, in substantially the same words.

It is contended that the last sentence of the section in the present code, namely, "Any juror is incompetent who has formed or expressed an opinion of the guilt or innocence of the defendant," was intended to express a different legislative meaning from that expressed in the previous sections; and that any opinion of the juror, however light or transient, concerning the guilt or innocence of the defendant, disqualifies him from trying the case. Under the codes of 1831, 1838 and 1843, it was uniformly held that an opinion formed by the juror as to the guilt or innocence of the defendant, from report or hearsay evidence, did not disqualify the juror. The first construction of section 84 in the present code was given by this court in the case of *Bradford* v. *The State*, 15 Ind. 347, in the following words: "In our opinion the proper construction to be placed upon this statute is, that, in ordinary cases, the par-

ties must avail themselves of the right to examine and challenge jurors, either peremptorily or for cause; if for cause, the court, after hearing the examination, etc., exercises a sound legal discretion in determining as to the competency of the juror. One of the disabilities of a person called is the formation or expression of an opinion, etc. It is so declared by the statute. The legal doctrine thus embodied in the statute had always been acted upon in practice in this State. To determine whether the sound legal discretion vested in the judge, has been abused or properly exercised, we must, in each instance, examine the question whether the opinion of the person offered had been formed upon such information, or information derived from such a source, as would probably make such an impression as might influence him, after hearing the facts detailed on the trial. In determining this question, the court below, and this court, should be governed by the legal rules applicable in such case, and which have obtained in reference to like cases, before the enactment of the statute."

By this opinion, which has since been uniformly followed, it will be seen that the construction given to the section in the code of 1852 is not essentially different from that given to the sections in the previous codes; and we can not disturb this line of decisions. If the question were still open, we should probably adopt the same course. If we were to hold to the strict construction contended for on behalf of the appellant—in this age of progress, when, by the telegraph and the press, not only local news but every important event or fact which transpires throughout the world on one day is spread before millions of readers of this nation on the next morning, and when "good and lawful men," of which juries are composed, are all readers or listeners, and while the human mind is prone to form hypothetical opinions upon every charge or report or rumor, which may be varied or contradicted by a subse-

quent telegram or the succeeding issue of a newspaper—
it would be impracticable to empanel a jury to try any
case that attracted the public attention or was the theme
of public news. It can not be held, therefore, that any or
every light, transient or frivolous opinion, formed from
the floating news of the day, which are often as changea-
ble as the flying clouds, as to the guilt or innocence of a
defendant, should render a juror incompetent to try his
case. An opinion, to disqualify a juror, should be founded
on what the juror supposes to be facts, and have such
tenacity as would not readily yield to contrary evidence,
and make such an impression upon the juror as would
probably influence him after hearing the evidence in
the case.

These rules apply only to honest and upright opinions.
A pretended opinion, formed out of corrupt motives, for
an ulterior purpose, or through ill-will toward the de-
fendant, whatever ground or want of ground it might
have or not have to rest upon, of course would be vicious,
and render the juror incompetent.

In the case before us the qualified opinion of each juror
objected to was formed upon hearsay evidence or newspa-
per reports, not upon facts known to the juror, and was
evidently of a character that would readily yield to con-
trary evidence. It does not seem probable to us that it
could have affected the opinion of the juror with all the
evidence of the case before him. We can not say that the
court exceeded a fair legal discretion in overruling the
challenges for cause. The ruling, in our opinion, is fully
sustained by the current of authorities. *McGregg* v. *The
State,* 4 Blackf. 101 ; *Van Vacter* v. *McKillip,* 7 Blackf. 578 ;
*Bradford* v. *The State,* 15 Ind. 347; *Fahnestock* v. *The
State,* 23 Ind. 231 ; *Burk* v. *The State,* 27 Ind. 430 ; *Mor-
gan* v. *The State,* 31 Ind. 193 ; *Clem* v. *The State,* 33 Ind.
418 ; *Cluck* v. *The State,* 40 Ind. 263 ; *Scranton* v. *Stewart,*

52 Ind. 68; *Gillooley* v. *The State*, 58 Ind. 182; Moore's Criminal Law, sec. 301; *Hart* v. *The State*, 57 Ind. 102; *Coryell* v. *Stone*, 62 Ind. 307; *The State* v. *Benton*, 2 Dev. & Bat. 196; *Mann* v. *Glover*, 2 Green, N. J. 195.

2. The main defence of the appellee was insanity. After he had introduced his evidence in support of this defence, the State called a number of witnesses to rebut, among them several physicians, to whom, with a view to obtain their professional opinion as experts, the State propounded several hypothetical questions. The facts assumed as a basis of the questions fell fairly within the scope of the case, and were supported by evidence tending more or less strongly to prove them This ruling is claimed to be erroneous. We do not think it was wrong. In such case the physician who was an expert might express his opinion as to the sanity or insanity of the defendant upon an admitted state of facts; or he might state facts within his knowledge as a witness, and express his opinion on them as an expert; or a state of facts falling within the case, supported in some degree by the evidence, might be assumed, upon which the witness, as an expert, might give his professional opinion; then, if the assumed facts are proved in the case, the statement of the opinion of the expert becomes evidence for the jury to consider, otherwise such opinion should not be considered; for, if the facts fail, the opinion based upon them must fail also. In stating a hypothetical case, it is not necessary to assume all the facts which the evidence tends to prove, as claimed on behalf of the appellant, but all the facts assumed must be supported by some evidence. The expert can not give his opinion upon evidence; it must be done upon admitted, proved or assumed facts. In our opinion the rulings of the court in this case are supported by the authorities. Moore's Criminal Law, secs. 31, 328; *Davis* v. *The State*, 35 Ind. 496; *Greenley* v. *The State*, 60 Ind. 141; 1 Wharton

Crim. Law, secs. 50 *d*, 50 *e*, 50 *f*; *Regina* v. *Frances*, 4 Cox C. C. 57; *Negroes Jerry et al.* v. *Townshend*, 9 Md. 145; *Potts* v. *House*, 6 Ga. 324; *Clark* v. *The State*, 12 Ohio, 483; *The People* v. *Thurston*, 2 Parker C. C. 49; *Commonwealth* v. *Rogers*, 7 Met. 500; *Woodbury* v. *Obear*, 7 Gray, 467; *United States* v. *McGlue*, 1 Curtis C. C. 1; *McAllister* v. *The State*, 17 Ala. 434; *Rex* v. *Wright*, 1 Russ. & Ry. 456; *Lake* v. *The People*, 1 Parker C. C. 495; *The People* v. *Robinson*, 1 Parker C. C. 649; *Regina* v. *Southey*, 4 Fost. & F. 864; *White* v. *Bailey*, 10 Mich. 155; *Rex* v. *Offord*, 5 C. & P. 168; *Bishop* v. *Spining*, 38 Ind. 143.

3. The appellant complains of the refusal by the court to give several instructions to the jury, but the only one insisted upon in the brief, and the only one, therefore, which we shall notice, is the following:

" 3. It is true, that, in the absence of any countervailing fact or presumption, every person is presumed to be of sound mind; but in the case of the defendant, which you are now engaged in trying, there is opposed to the presumption of soundness of mind, the presumption that the defendant is innocent until the contrary is proved; and this presumption of the innocence of the defendant countervails and overcomes the presumption that he was of sound mind; and, in the absence of any evidence on the part of the State tending to prove that the defendant was of sound mind at the time of the homicide, you ought to find the defendant not guilty."

This instruction was properly refused. We can not regard it as the law of the case. Besides, instructions numbered 8 and 9, given by the court, cover the entire ground attempted to be presented by instruction numbered 3, refused by the court.

4. The court gave to the jury the following instructions, to which exceptions were properly reserved:

" 7. Frenzy arising solely from the passions of anger

and jealousy, no matter how furious, is not insanity. A man with ordinary will power, which is unimpaired by disease, is required by law to govern and control his passions. If he yields to wicked passions, and purposely and maliciously slays another, he can not escape the penalty prescribed by law, upon the ground of mental incapacity. That state of mind caused by wicked and ungovernable passions, resulting not from mental lesion, but solely from evil passions, constitutes that mental condition which the law abhors and to which the term malice is applied. The condition of mind which usually and immediately follows the excessive use of alcoholic liquors, is not the unsoundness of mind meant by our law. Voluntary drunkenness does not even palliate or excuse.

"9.    The law presumes that a man is of sound mind until there is some evidence to the contrary. In prosecutions for offences against the criminal code, an accused is entitled to an acquittal, if the evidence engenders a reasonable doubt as to the mental capacity at the time the alleged offence is charged to have been committed. Evidence rebutting or tending to rebut the presumption of sanity need not, to entitle the defendant to an acquittal, preponderate in favor of the accused. It will be sufficient if it raise in your minds a reasonable doubt.

"10.    The presumption of innocence attends the accused step by step throughout the entire case, and he is entitled to its benefit upon every question involved, as well upon that of mental capacity as upon all others. The effect of the presumption of innocence upon the question of mental capacity is of such strength as to require that the evidence shall establish soundness of the mind beyond a reasonable doubt, but is not of such power as to require the State in the first instance, and before the introduction of evidence tending to show mental incapacity, to prove the mental capacity to have been in the normal condition

usually possessed by ordinary men. The presumption of innocence is so far of greater strength than that of sanity, that, when evidence appears tending to prove insanity, it compels the prosecution to establish, from all the evidence, mental soundness beyond a reasonable doubt.

"13. The opinions of medical experts are to be considered by you, in connection with all the other evidence in the case; but you are not bound to act upon them to the entire exclusion of other testimony. Taking into consideration these opinions, and giving them just weight, you are to determine for yourselves, from the whole evidence, whether the accused was or was not of sound mind, yielding him the benefit of a reasonable doubt, if such arises from the evidence.

"15. You are not to take for granted that the statements contained in the hypothetical questions which have been propounded to the witnesses are true. Upon the contrary, you are to carefully scrutinize the evidence, and from that determine, what, if any, of the averments, are true ; and what, if any, are not true. Should you find from the evidence that some of the material statements therein contained are not correct, and that they are of such a character as to entirely destroy the reliability of opinions based upon the hypothesis stated, you may attach no weight whatever to the opinions based thereon. You are to determine, from all the evidence, what the real facts are, and whether they are correctly or not stated in the hypothetical question or questions. I need hardly remind you (for it will suggest itself to your own minds), that an opinion based upon an hypothesis wholly incorrectly assumed, or incorrect in its material facts, and to such an extent as to impair the value of the opinion, is of little or no weight. Upon the matters stated in these hypothetical questions, and which are involved in this investigation, you are to give the defendant the benefit of all reasonable

doubt, if any there should be; and, where there is a reasonable doubt as to to the truth of any one of the material facts stated, resolve it in the defendant's favor."

Counsel for appellant object particularly to the first sentence of instruction numbered 7. It is true, that that sentence does not state a legal proposition. It only says that "Frenzy arising solely from the passions of anger and jealousy, no matter how furious, is not insanity." This is, doubtless, correct. Frenzy arising from passion of any kind is violent and temporary, and would subside with the passion. Insanity may be without violence and permanent, and not in any way caused by passion. We think the sentence is harmless. It does not appear to us that it could possibly have injured the appellant.

It affords no ground, therefore, to reverse the judgment. The remainder of the instruction is correct; indeed, we do not understand the counsel as objecting to any part of it except the first sentence.

In our opinion instruction numbered 9 is so clearly right that we do not discuss it.

We can scarcely approve of the last sentence of instruction numbered 10; but it contains nothing of which the appellant can complain. If it is erroneous, the error is in his favor. It is true, that if the defendant introduced sufficient evidence to raise a reasonable doubt of his soundness of mind, it then would become necessary for the State, if she insisted upon a conviction, to prove the defendant's mental soundness beyond a reasonable doubt; but there may be evidence tending to prove insanity, and not be sufficiently strong to raise a reasonable doubt of mental soundness. In this we think the proposition is incorrect. But the error, being against the State, the appellant is not injured thereby. The remaining portion of the instruction is correct.

Instruction numbered 13 and 15 properly express the

law, and are fully sustained by the authorities cited under question numbered 2, already discussed.

5. We understood the counsel for the appellant to waive question numbered 5. We think very properly. It does not appear that any such question was raised in the court below, and, if not, of course could not be considered here.

6. But it is insisted finally that the Marion Criminal Circuit Court, in which the appellant was tried, and from which he appeals to this court, has no legal existence, for want of constitutional authority in the Legislature to create it.

This question has been settled so frequently by this court, against the views of the learned counsel, that we must consider it no longer open for our consideration. *Case* v. *The State*, 5 Ind. 1 ; *Shattuck* v. *The State*, 11 Ind. 473 ; *Combs* v. *The State*, 26 Ind. 98 ; *Anderson* v. *The State*, 28 Ind. 22 ; *Eitel* v. *The State*, 33 Ind. 201 ; *Weis* v. *The State*, 33 Ind. 204 ; *Ex Parte Wiley*, 39 Ind. 546 ; *Cropsey* v. *Henderson*, 63 Ind. 268.

We have thus carefully examined all the questions presented for our consideration on behalf of the appellant. There is nothing in the record to show us that the appellant was not indicted, tried and convicted according to the law and the facts of the case.

The judgment is therefore affirmed, at the costs of the appellant.