Filed Nov. 26, 1883.

---

No. 11,081.

BOARD OF COMMISSIONERS OF HOWARD COUNTY *v.* ARM-STRONG, GUARDIAN.

TAXES. — *Refunding of.*—*Statute Construed.*— *Voluntary Payment.*—Sections 5813 and 5814, R. S. 1881, require that taxes wrongfully assessed shall be refunded, though they have been paid voluntarily, but, in such case, it must appear not merely that the assessment was irregular, but also that the taxes were neither justly nor equitably due.

SAME.—*Guardian and Ward.*—*Failure to List Ward's Property.*—*Fraud.*—*Illegal Assessment.*—Where a guardian, having funds of his ward, fails to list it as required by law, with intent to defraud the revenue, and the same is afterwards unlawfully assessed, and the taxes charged thereon voluntarily paid by the guardian, the statute does not authorize a refunding thereof, the assessment in such case not being *wrongful* in the sense of the statute.

From the Howard Circuit Court.

*J. O'Brien* and *C. C. Shirley*, for appellant.

*R. Vaile, J. B. Julian, J. F. Julian* and *W. W. Woollen,* for appellee.

NIBLACK, J.—This was a proceeding based upon a claim filed against the board of commissioners of Howard county, for the refunding of taxes under sections 5813 and 5814 of the Revised Statutes of 1881.

Addison F. Armstrong as claimant, in the similitude of a complaint, charged that he was guardian of the persons and estates of Carrie E. Matlock and Sabert S. Matlock, minor heirs at law of Jackson Matlock, deceased, and that on the 26th day of February, 1881, there was standing against him as such guardian, on the tax duplicate of Howard county as taxes assessed on the property of his wards, the sum of $95.48 ; that the treasurer of said county demanded of him payment of said taxes which he paid, over objection made by him; that of the amount so paid the sum of $13.74 was assessed for the year 1880, and was legally and properly assessed, but that the remaining sum of $80.34 was for taxes charged on property claimed to have been held by him as guardian during the years 1875, 1876 and 1878, which had never been regularly assessed and returned to the auditor for taxation by the proper assessor, but which had only been unlawfully placed on the tax duplicate by the treasurer, after it came into his hands, and had been brought forward by him and placed on such duplicate, in the same way, for the year 1880 ; that of said last named sum, which had thus been falsely demanded and collected, $64.18 was for county taxes, and $16.16 was for State taxes; that repayment of said sum of $80.34 had been demanded and refused.

In the circuit court, the commissioners demurred to the statement of claim filed as above for want of sufficient facts to constitute a claim for refunding taxes under the statute, but their demurrer was overruled. They then answered as follows :

"The board of commissioners of Howard county, Indiana, defendants, for answer to the complaint herein filed, say that the plaintiff, Addison F. Armstrong, as guardian of said Carrie E. Matlock and Sabert S. Matlock, ought not to recover as he has prayed in his complaint, because these defendants say that the said guardian of said wards was their guardian during the years 1875, 1876 and 1878, having been appointed in the year 1875, on the 19th day of March of that year, and has been continuously their guardian ever since, and is still their guardian, and that immediately after having become such guardian in said year, and prior to April 1st, 1875, he received the sum of $3,000 belonging to said wards jointly, and which was the amount of a policy of life insurance held by Jackson Matlock, the father of said wards, which was payable to them and for the exclusive benefit of said wards, and was paid in cash to said Armstrong promptly after he became their guardian. And soon after receiving the said sum of $3,000 life insurance money, said Addison F. Armstrong received the further sum of $3,000 in money belonging to his said wards jointly, from the settlement of the personal estate of said Jackson Matlock, and which was due them on distribution of their father's estate, and said Addison F. Armstrong had said sums of money in his hands at the times he was called upon by the assessor of Center township, Howard county, Indiana, which is the township where said guardian resides, also, the township in which his wards reside and their estate is situate; and said Addison F. Armstrong was for each of said years duly and legally called upon by the lawfully elected and duly qualified assessor of said township, but did not give in said property, or any part thereof, belonging to his said wards, to be listed for taxation, but fraudulently and wrongfully withheld the same from the assessor, with the fraudulent and wrongful intent of cheating, wronging and defrauding the State of Indiana and the county of Howard in said State, out of the lawful taxes and charges to said State and county from said guardian of said wards, for

the property so owned by them and properly chargeable with taxes; that afterward said property was properly assessed and put on the tax duplicate for the several years specified in said petition or complaint herein filed, and said Armstrong, petitioning plaintiff herein, with full knowledge of all the facts as to the manner of assessing said property for taxes, and of his wrongfully withholding said property from the assessor each year for which taxes were paid as claimed, voluntarily paid said taxes, with a full knowledge that said taxes were justly due and owing from his wards for property owned by them at the time of assessing, to wit: April 1st of each year, named in the complaint, without any protest whatever being entered by said Armstrong, or any other person in his behalf, as to the manner of assessing said taxes; that the said wards' property was not under levy, and no levy or other proceedings to make said taxes by distress were being urged or threatened, at the time of such payment, by said guardian of said several sums for taxables.    Wherefore defendants say that said plaintiff, by his wrongful and fraudulent conduct, in not listing and assessing said property, and in paying said several sums without protest and voluntarily, when no proceedings were being urged to collect the same, is estopped, and can not recover for any or either of said items stated and contained in his complaint, and demands judgment for costs."

A demurrer was sustained to the answer, and the commissioners declining to answer further, judgment was rendered against them, ordering them to cause the sum of $64.18 to be refunded to Armstrong, as that amount of county taxes wrongfully paid by him, and directing them to certify to the auditor of State that the sum of $16.16 had been wrongfully paid by him as State taxes.

Questions are made here upon the decisions of the circuit court: *First.* Overruling the demurrer to the complaint. *Secondly.* Sustaining the demurrer to the answer.

Section 5813 of the statute is in these words: "In all

cases where any person or persons or body politic or corporate shall appear before the board of commissioners of any county in this State, and establish, by proof, that such person or body politic or corporate has paid any amount of taxes which were wrongfully assessed against such person or body politic or corporate in such county, it shall be the duty of said board to order the amount, so proved to have been paid, to be refunded to said payer from the county treasurer, so far as the same was assessed and paid for county taxes."

Section 5814 further provides that, " In all cases where a portion of the amount so wrongfully assessed and paid shall have been for State purposes, and shall have been paid into the State treasury, it shall be the duty of the said board of commissioners to certify to the auditor of State the amount so proven to have been wrongfully paid, under the seal of said board of commissioners; and the auditor of State shall, thereupon, audit the same as a claim against the treasury, and the treasurer of State shall pay the same out of any moneys not otherwise appropriated."

It is evident that formal and elaborate pleadings were not contemplated by the framers of the statute authorizing such proceedings as these. The presentation of a claim, and the establishment of it by proof, appear to be the only essential proceedings necessary to obtain relief under sections 5813 and 5814, set out as above. *Board, etc., v. Wood,* 35 Ind. 70; *Board, etc., v. Shrader,* 36 Ind. 87; *Board, etc., v. Everett,* 51 Ind. 543; *Board, etc., v. Ritter,* 90 Ind 362. But we know of nothing to prevent the parties, in a case like this, from making a formal presentation of facts as the ground of a claim upon the one side, or of the facts relied on as a defence upon the other, and from taking the opinion of the court, if the parties choose to do so without objection, upon the sufficiency of the facts thus formally presented. Such has been and continues to be the practice in cases somewhat, if not entirely, analogous. *Over v. Shannon,* 75 Ind. 352; *Puett v. Beard,* 86 Ind. 172 (44 Am. R. 280).

Where there is final judgment upon demurrer in such a case, the facts admitted by the demurrer supply the place of facts established by proof at a formal hearing, and the cause will be reviewed here upon the facts presented by the pleadings. Whether a judgment will be reversed for error in ruling upon the sufficiency of a pleading in a case like this, must depend upon the effect such ruling had, or probably had, upon the ultimate decision of the cause.

When, in such proceedings, proof has been made, and the judgment is right upon the evidence, the judgment will not be reversed because of some abstract error of ruling upon the pleadings.

The case of *Lamborn* v. *County Commissioners*, 97 U. S. 181, states the common law rule, touching the recovery back of money illegally paid, to be that "Where a party pays an illegal demand with a full knowledge of the facts which render such demand illegal, without an immediate and urgent necessity therefor, or unless to release his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed to be voluntary, and can not be recovered back. And the fact that the party, at the time of making the payment, files a written protest does not make the payment involuntary."

Dillon on Municipal Corporations says that "Money voluntarily paid to a corporation under a claim of right, without fraud or imposition, for an illegal tax, license, or fine, can not—there being no coercion, no ignorance or mistake of facts, but only ignorance or mistake of the law—be recovered back from the corporation, either at law or in equity, even though such tax, license, fee, or fine could not have been legally demanded and enforced." But, at another place, the same author states his conclusion to be that "Money paid by a person to prevent an illegal seizure of his person or property by an officer claiming authority to seize the same, or to liberate his person or property from illegal detention by such officer, may be recovered back in an action for money had and received,

on the ground that the payment was compulsory, or by duress or extortion. Under this rule, illegal taxes, or other public exactions, paid to prevent such seizure or remove such detention, may be recovered back, unless prohibited by some statutory regulation to the contrary."

Dillon further states that actions to recover back taxes "are usually brought *in assumpsit* for money had and received, are equitable in their nature, and lie for money actually paid to the corporation, and which it is against equity and good conscience it should retain. If a tax has been levied upon the plaintiff's property, and if that property is subject to the tax, the amount is justly and equitable due, and can not, for any *mere irregularities* in the detail or mode of proceeding, be recovered back." And, again, that "actions against a municipal corporation to recover back money upon the ground of *illegality of the tax or assessment* are, upon principle and the weight of authority, maintainable when, and in general only when, the following requisites co-exist: 1. The authority to levy the tax, or to levy it upon the property in question, must be *wholly wanting*, or the tax itself wholly unauthorized, in which cases the assessment is not simply irregular, but *absolutely void*. 2. The money sued for must have been *actually received* by the defendant corporation, and received by it for *its own use*, and not as an agent or instrument to assess and collect money for the benefit of the State, or other public corporation or person." Dillon Munic. Corp. (3d ed.), sections 939, 940, 941, 942, 943, 944, 945 and 946. Burroughs Tax. 266; Cooley Tax. 566, 567; *Bucknall* v. *Story*, 46 Cal. 589 (13 Am. R. 220).

It has been held, in this State, that in the absence of a statute authorizing such a proceeding, an illegal tax voluntarily paid can not be recovered back. *Jenks* v. *Lima Township*, 17 Ind. 326; *Board, etc.,* v. *Ruckman*, 57 Ind. 96.

As bearing upon the subject of voluntary payments, see also the cases of *Busby* v. *Noland*, 39 Ind. 234; *Town of Ligonier* v. *Ackerman*, 46 Ind. 552 (15 Am. R. 323); *Town*

*of Sullivan* v. *McCammon,* 51 Ind. 264; *Town of Edinburg* v. *Hackney,* 54 Ind. 83; *Town of Brazil* v. *Kress,* 55 Ind. 14; *Worley* v. *Moore,* 77 Ind. 567; *Powell* v. *Bunger,* 79 Ind. 468; *Brown* v. *Fodder,* 81 Ind. 491; *Town of Columbia City* v. *Anthes,* 84 Ind. 31 (43 Am. R. 80).

In the light of these authorities, the payment by Armstrong of the taxes in question, "over objection," simply did not constitute the payment an involuntary one in that sense which entitled him to recover back these taxes independently of any statute on the subject of refunding taxes. But, as will be observed, section 5813, R. S. 1881, to which reference has been made, changes the rule recognized by the authorities, cited as above, on the subject of refunding taxes, and requires taxes, however voluntarily paid, to be refunded upon proof that such taxes were *wrongfully* assessed; and the important question to be settled in this case is, what constitutes a *wrongful* assessment within the meaning of that section of the statute?

It was held by this court in the case of *State, ex rel.,* v. *Howard,* 80 Ind. 466, that a county treasurer, under section 94 of the act of December 21st, 1872, 1 R. S. 1876, p. 72, had no authority to assess taxes upon property omitted from assessment except for the current year.

It is maintained on Armstrong's behalf that a proper construction of the complaint in this case makes it mean that, after the tax duplicate for the year 1880 was delivered to the treasurer of Howard county, for the collection of taxes, he proceeded to make assessments of taxes against Armstrong as guardian, for property claimed to have been in his hands belonging to his wards, and omitted from assessment, during the years 1875, 1876 and 1878, and to charge the taxes so assessed for those years in gross upon the duplicate for 1880; that applying the doctrine of the case of *State, ex rel.,* v. *Howard, supra,* to the facts thus charged in this case, it must be held that the assessment of taxes by the county treasurer, for all the years previous to 1880, was irregular and un-

lawful, and consequently *wrongful* in the sense in which that word is used in the statute.

Webster defines *wrongfully* as meaning: "In a wrong manner; unjustly; in a manner contrary to the moral law, or to justice." *Unlawfully* is not the full equivalent of *wrongfully*. A thing may be *unlawful* without being contrary to good morals, or to natural justice. *Wrong* is the opposite to *right*, whether considered with reference to strict law, or the principles of equity. The word "wrongful," therefore, has a much broader and stronger meaning than the word "unlawful."

The plain inference appears to us to be that a tax may be *irregularly* and even *unlawfully* assessed, without inflicting a *moral wrong* or *an injustice* upon the owner or holder of the property upon which the tax is charged.

Accepting the construction of the complaint sought to be maintained, the assessments made by the county treasurer for all the years previous to 1880, were not only *irregular*, but *unlawful*, that is, without authority of law as to the manner in which they were made, and the payment of the taxes charged upon those assessments could not have been enforced. But the answer avers that Armstrong had the money in his hands upon which the county treasurer assumed to make assessments for the years 1875, 1876 and 1878; that this money was liable to taxation, but was each year fraudulently concealed from the proper assessor by Armstrong, and had in that way escaped taxation; that consequently the taxes charged by the county treasurer upon the duplicate for those years against Armstrong, as guardian, were justly and equitably due from his wards.

We think the rule laid down by Dillon, that to enable a party to recover back taxes voluntarily paid, he must show, not simply that such taxes were irregularly assessed, but that they were neither justly nor equitably due from him, applies to cases of the class to which this belongs, and is decisive of this case against the claim of the appellee. Property liable to taxation can not, in our opinion, be held to have been

*wrongfully* assessed in the sense in which that term is used in the sections of the statute before us, simply because some irregular or unauthorized method was resorted to in assessing taxes justly due upon it.

A careful examination of the authorities, as applicable to the facts of this case, has brought us to the conclusion that the complaint, considered as a formal presentation of the matters relied on for a recovery in this proceeding, was defective in not making it appear, by proper averments, that the taxes sought to be recovered back were neither justly nor equitably due from Armstrong's wards; also, that the facts set up in the answer constituted, in any event, a good defence to the complaint.

The judgment is reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion.

Filed Nov. 27, 1883.