Cluck v. The State.

———◦———

## CLUCK v. THE STATE.

PRACTICE.—*Bill of Exceptions.—Amendment.*—The Supreme Court can act only upon the record as made up in the court below, and if the record be imperfect there, the error cannot be amended, except on proper motion in such original court.

SAME.—*Report of Evidence.*—*Signature of Judge.*—A bill of exceptions should not be signed by the judge, until the evidence, as taken down, has been written out in full, and the judge has examined it, so as to satisfy himself of its accuracy, and it has been embodied in the bill. The notes of the reporter, appointed by the court, are not included in the words "written instrument and documentary evidence," used in the statute.

EVIDENCE.—*Criminal Law.*—*Threats.*—Upon a trial for murder, it is competent for the State to prove threats made by the defendant against the life of the deceased previous to the time of the murder charged.

SAME.—*General Character.*—*Argument.*—Where the defendant has not introduced proof of his general character on the trial, the court may properly refuse to permit the defendant's counsel to comment, in argument, upon such character.

CHALLENGE OF JUROR.—*Opinion.*—It is not a sufficient ground for challenge of a juror, that he formed some opinion as to the guilt or innocence of the accused, about the time of the homicide, from reading the newspapers, if the juror state that he has now no opinion as· to the guilt or innocence of the defendant, and has forgotten the circumstances of the case, and that any opinion formed would readily yield to the evidence and the law.

PRACTICE.—*Notes of Evidence by Juror.*—The fact that one of the jurors took notes with pencil and paper during the progress of a trial of an indictment for murder, without objection made by the defendant at the time, or any order of the court made on the subject, is not sufficient ground for a new trial.

VENUE.—*Evidence.*—Where the record showed that an indictment for murder, on which the defendant was tried, was found by the grand jury of the Marion Criminal Court; and the indictment charged the homicide as committed in Marion County, and the defendant was tried in that county, and it was proved that the deceased was shot and killed in Indianapolis;

*Held,* that the venue was sufficiently established.

INTOXICATION.—*Motive.*—*Disease.*—On a trial for murder, no proof of intoxication at the time of the crime, which falls short of showing the defendant to have been utterly incapable of acting from motive, will shield him from conviction. If the reason be perverted, or destroyed by fixed disease, though brought on by his own vices, the law holds him not accountable.

APPEAL from the Marion Criminal Court.

BUSKIRK, J.—The appellant was indicted, tried, and convicted in the court below of murder in the first degree, and was sentenced to be hanged. He moved the court for a new trial, but the motion was overruled, and he excepted. The court thereupon rendered judgment that the death penalty should be inflicted upon him on the 20th day of December, 1872.

From such judgment he has appealed to this court, and

asks a reversal thereof, on the ground that the court erred in overruling his motion for a new trial.

Before proceeding to consider the errors assigned and discussed by counsel for the appellant, we are required to dispose of some motions which have been made on behalf of the State.

An application has been made in this court, supported by affidavits, to have the bill of exceptions embodying the evidence amended, by inserting therein the testimony of several witnesses on behalf of the State, which it is alleged has been entirely omitted. It has been very fully and satisfactorily shown by the affidavits filed in support of such motion that the witnesses named testified to matters material to the case, and of the utmost importance to the prosecution, and that the testimony of such witnesses has been entirely omitted in the bill of exceptions. By the testimony of one of these witnesses, it was plainly and expressly proved that the crime was committed in the county of Marion, and State of Indiana. We have felt constrained to overrule the motion. This is an appellate court for the correction of errors committed by the inferior courts of the State. This court possesses no original jurisdiction. This court acts alone upon the record as made in the inferior court, and as certified to us, in the manner prescribed by law.

It is provided by sec. 585 of the code, that "any appellate court shall have full power to compel any inferior court, board, or officer exercising judicial functions, or other person, to certify to such court a full and complete transcript of the records and proceedings of any such tribunal, board, officer or person, and the production of any paper, whenever it shall be necessary for the proper determination of any cause or proceeding pending before the appellate court. The breach of any order may be punished as a contempt." 2 G. & H. 279.

By the above section of the code, we have full power to compel any inferior court, board, or officer exercising judicial functions, or other person to certify to this court a full

and complete transcript of the records and proceedings of any such tribunal, board, officer, or person, and compel the production of any paper, whenever it shall be necessary for the proper determination of any cause or proceeding pending in this court, but it confers on us no power to alter or change the record of the court below. The power conferred is to compel the inferior tribunals and ministerial officers to certify to us full and complete transcripts of the records and proceedings as they exist in the court below, but they must exist there. If there is an omission or defect in the records and proceedings in the court below, application must be made in such court to correct and amend such records and proceedings, and when so corrected we can, by *certiorari*, compel such court or officer to certify the record and proceedings as amended. Let us illustrate our meaning. A bill of exceptions is a record of high authority and great sanctity, and is not to be lightly interfered with. If the omitted testimony had been embodied in the bill of exceptions, and had thus become a part of the record, and the clerk, in making out the transcript, had failed to insert it therein, we have full power to compel him to certify to us such omitted testimony. But if the testimony was offered on the trial, but was not put in the bill of exceptions, then application would have to be made to the court below to amend the bill of exceptions by inserting the omitted testimony, and when so amended we could, by *certiorari*, compel the clerk to certify to us the amended bill of exceptions.

Upon the point involved in the motion under consideration, we refer to the following authorities: *Songer* v. *Walker,* 1 Blackf. 251; *Doe* v. *Owen,* 2 Blackf. 452; *Jones* v. *Van Patten,* 3 Ind. 107; *Colerick* v. *Hooper,* 3 Ind. 316.

There has also been a motion made on behalf of the State, to reject and strike from the record the bill of exceptions, upon the ground that the bill, as it appears in the record, is different from what it was when it was signed by the judge. The motion was supported by affidavit. We awarded a *certiorari,* and in obedience thereto the clerk has certified to

us the bill of exceptions as it was when signed by the judge below, and which is as follows:

"The State of Indiana *v.* William Cluck. State of Indiana, Marion county, ss.: in the criminal circuit court.

"And now, be it remembered that on the 21st day of October term of the Marion County Criminal Circuit Court the above-entitled cause came on for trial before the Hon. Byron K. Elliott, the judge of the said court; and in the proceedings of said cause, the honorable court refused,

"First. To allow a challenge for cause to a juror, who had, at or about the time of the murder alleged, formed an opinion of the guilt or innocence of the defendant, from the reading of the newspapers, and upon no other ground, but who had afterward forgotten the circumstances of the case; and who had at the time of the trial no opinion, and who stated that his opinion would readily yield to the evidence and the law.

"Second. To permit the defendant's attorney to state to the jury, upon the argument, defendant's general character, no evidence having been adduced by either defence or prosecution upon the subject of character, to which ruling the defendant at the time excepted, and the verdict guilty having been pronounced by the jury.

"Third. To grant the defendant's motion for a new trial, the said motion being based, first, upon affidavits showing that during the course of the trial one of the jurors, with pencil and paper, took written notes of the evidence as it was produced by witnesses, and in support of and in opposition to said motion, the following affidavits were filed (here insert); second, upon the admission of evidence as to threats.

"To which defendant excepted, and because of which he now prays the honorable court that this bill of exceptions may be signed by and sealed with the seal of the said court, and made a part of the record of the above-entitled cause; that the following was the evidence, and all the evidence, given upon the trial of said cause:

"(Insert reporter's notes).

Cluck *v.* The State.

"Signed and sealed within the time allotted.

"BYRON K. ELLIOTT.

"It is agreed that the evidence, before this bill shall be of any effect, shall be revised and corrected by the attorney for the prosecution.        B. K. ELLIOTT, Judge."

Two objections are urged to the validity of the bill of exceptions; first, that the court possessed no power to sign the bill of exceptions purporting to contain the evidence, until the evidence had been written out in full in such bill, and until he was satisfied that it contained the truth.

In the case of *Stewart* v. *Rankin*, 39 Ind. 161, this court held, that "a judge may very properly sign a bill of exceptions, with a blank, where the purpose is to make a part of the record some written instrument or documentary evidence, but he should never sign a bill of exceptions purporting to embody the parol testimony, until such testimony has been written out in full in such bill of exceptions, and he has convinced himself, either by the consent of opposing counsel or a personal examination, that it contains the truth, the whole truth, and nothing but the truth. The law imposes this duty upon the judge, and he should not shrink from its faithful performance, however laborious it may be."

The case under consideration furnishes another and striking illustration of the wisdom and necessity of the ruling in the above case. It had become too much the practice, in this State, for judges to sign bills of exceptions embodying the evidence in blank, leaving it for opposing counsel to agree upon the evidence and have it inserted. The result has usually been that opposing counsel could not agree upon the testimony, or that counsel representing the appellant has prepared the evidence without consulting the opposite counsel. The practice was attended with many evils, and frequently worked absolute injury to parties, in some cases amounting to a denial of justice. The testimony should be prepared while it is fresh in the recollection of the counsel and the judge.

It is, however, insisted by counsel for the appellant that

Cluck *v.* The State.

the bill of exceptions in this case should be held good under the ruling in the above case, for the reason that the reporter's notes should be regarded as a written instrument or documentary evidence. We think otherwise. The words "written instrument and documentary evidence," as used in the statute, evidently had reference to such instruments as were the foundation of the action, or exhibits filed with the pleadings, and to depositions and documentary evidence. The notes of a reporter appointed by the court to take down the evidence cannot be regarded as documentary evidence. The appointment of a reporter is very convenient, and saves much time, but his notes are not evidence; but he should write out the evidence in full, and when it has been examined and approved, it should go into the bill of exceptions, and not otherwise; but it must be inserted before it is signed.

It is next urged that the bill of exceptions was not absolute, but conditional, as it was to have no effect until it was "revised and corrected by the attorney for the prosecution."

The very learned and usually accurate and correct judge who presided at the trial of this cause in the court below obviously intended to guard against what has occurred. It appears, from the affidavits filed, that the three witnesses whose testimony has been omitted from the bill of exceptions were examined and gave their testimony before the reporter commenced taking notes of the evidence, and this caused the omission of their testimony, and it seems that the omission was not discovered by the prosecuting attorney until after the appeal had been perfected.

In view of the fact that when this cause was tried the ruling of this court in the case of *Stewart* v. *Rankin, supra,* was not generally known to the bench and bar of the State, and in view of the further fact that this is a capital case, and upon our decision depends the question of life or death, we have concluded that, notwithstanding the evidence is not properly in the record, we will consider and examine it as though it were in the record.

We approach the examination of the errors assigned and

relied upon for a reversal of the judgment, deeply and profoundly impressed with the magnitude of the interests involved; for upon the one hand depends the life of the prisoner, while on the other depend the safety and protection of society from the commission of such horrible and atrocious crimes as the one with which the prisoner is charged; nor have we lost sight of the principle of law, that society is as much protected by the acquittal of the innocent as it is by the conviction of the guilty.

It is, in the first place, insisted by counsel for the appellant that the court below erred in admitting in evidence, over his objection, testimony tending to prove that the appellant had, previous to the commission of the homicide, threatened to take the life of the deceased. It is well and firmly settled by all the elementary writers and the adjudged cases, that it is competent to prove, upon the trial of a person accused of the commission of murder, that he had, previous to the commission of such crime, threatened to commit the offence imputed to him. The law is too well understood to require or justify a discussion thereof or a reference to authority.

It is next claimed that the court erred in refusing to permit the counsel for the appellant to comment, in argument, upon the general character of the prisoner. There is nothing in the objection. It is shown by the bill of exceptions that no evidence was offered, either by the defendant or the State, as to the character of the defendant. The law presumes that every man has a good character, and it would have been competent for the counsel to have commented on such presumption; but he had no right to discuss the character of the accused, unless such character had been put in issue by the evidence. It is not shown by the bill of exceptions that the counsel attempted to comment on the presumption of good character, or that he was denied that right; but it is shown that he was prevented from discussing his character. The appellant had the undoubted right to prove by witnesses that he was a man of good character; and if

this had been done, his counsel would have had the right to discuss such evidence before the jury. The prosecuting attorney cannot enter into the defendant's character, unless the defendant enable him to do so by calling witnesses in support of it. In such case, the prosecutor may offer evidence to prove bad character. When the general character of the accused has been put in issue by his calling witnesses to support it, the State may attack his character; and when evidence has been offered as to character, the sufficiency and weight of such evidence may be discussed before the jury. 2 Russell Crimes, 785; secs. 25, 26, 3 Greenl. Ev. 24–26; 1 Chitty Crim. Law, 573, 575, 625.

It is next claimed that the court erred in refusing the appellant's challenge of a juror, because he had formed some opinion as to the guilt or innocence of the accused, about the time of the homicide, from reading the newspapers. We think there was no error in the ruling of the court. It is shown by the bill of exceptions that the juror stated that he then had no opinion as to the guilt or innocence of the defendant.

In our opinion, the juror was competent, as is fully shown by the adjudged cases in this court. *M'Gregg* v. *The State,* 4 Blackf. 101; *Van Vacter* v. *M'Killip*, 7 Blackf. 578; *Morgan* v. *Stevenson*, 6 Ind. 169; *Rice* v. *The State*, 7 Ind. 332; *Bradford* v. *The State*, 15 Ind. 347; *Fahnestock* v. *The State*, 23 Ind. 231; *Burk* v. *The State*, 27 Ind. 430; *Morgan* v. *The State*, 31 Ind. 193; *Clem* v. *The State*, 33 Ind. 418.

In the case last cited, two of the jurors stated that they had formed opinions of the case from reading newspaper accounts of the facts, and from rumor, and one of them had expressed that opinion, which, it appeared, was a mere impression, not made up from conversations of witnesses; and they thought that if sworn as jurors said opinion would have no influence upon them, and that they could act solely upon the evidence offered upon the trial, and it was evident that they had no fixed opinion, and this court held that such jurors were competent.

Cluck *v.* The State.

The decisions in this State as to the competency of jurors, by reason of having formed an opinion, are in entire harmony with, and are fully supported by, the decisions in the other states of the Union.

It is next urged that the court should have granted the appellant a new trial, because during the progress of the trial, one of the jurors, with pencil and paper, took notes of the evidence, and in support of this objection we are referred to the case of *Cheek* v. *The State*, 35 Ind. 492. The ruling in that case was based upon the ground that "two of the jurors, over the objection of the defendant, and after the court had told them they must not do so, persisted in writing down notes of the evidence."

In the case under consideration, the defendant did not object to the jurors taking notes, nor did the juror act in disobedience to the orders of the court. As the defendant did not, at the time, object, we will presume that it was done with his consent, and he cannot be heard here to object to what he consented to in the court below. It is not shown that the defendant did not know that the juror was taking notes.

It is, in the next place, maintained by counsel for appellant, with great earnestness and apparent confidence, that the State failed to prove upon the trial that the crime was committed in the county of Marion, and State of Indiana. The objection, if true, is well taken, and must reverse the judgment, for unless the venue was proved as laid in the indictment, the court would have no jurisdiction, and its judgment would be absolutely void.

It is shown by the record in the cause that the indictment was found by the grand jury of the Marion Criminal Court. It is charged in the indictment that the homicide was committed in the county of Marion, and State of Indiana. It is shown by the record that the defendant was tried in the Marion Criminal Court, in said State.

It was proved upon the trial, by quite a number of wit-

nesses, that the deceased was shot and killed at the corner of Meridian and Ray streets, in the city of Indianapolis.

It is within the judicial knowledge of this court that there is in the State of Indiana such a county as Marion; that the city of Indianapolis is the seat of justice of such county; and that the courts of said county hold their sessions in the said city of Indianapolis.

When, therefore, it is shown by the record, as it is in the case under consideration, that the indictment was found by the grand jury of Marion county, in the State of Indiana; that the indictment charges that the crime was committed in said county and State; that the defendant was tried by jury in the said county and State; and where it is proved, as it was in the case at bar, that the crime was committed in the city of Indianapolis, we will take judicial notice that the crime was committed in the county of Marion and State of Indiana.

This view of the law is fully supported by the case of *Whitney* v. *The State*, 35 Ind. 503. This court, in that case, say: "It is also urged that the venue was not proved by showing that the act was perpetrated in Marion county, Indiana. The prosecutrix testified on this point: 'It was in Indianapolis, in this county.' As the trial was being held in Indianapolis, in Marion county, Indiana, as we know from the record, the statement that it was 'in this county,' seems to us sufficient."

We are as much bound to take notice that the city of Indianapolis is in the county of Marion as that Marion county is in the State of Indiana, or that "this county" meant Marion county.

As to what matters the court takes judicial notice of, we refer to 1 Greenl. Ev. 6; *Griffing* v. *Gibb*, 2 Black, 519; *Lyell* v. *Lapeer County*, 6 McLean, 446; *Fauntleroy* v. *Hannibal*, 1 Dillon, 118; *Wiggins* v. *Burkham*, 10 Wal. 129; *The Junction Railroad Co.* v. *The Bank of Ashland*, 12 Wal. 226;

*Mossman* v. *Forrest*, 27 Ind. 233; *Buckinghouse* v. *Gregg*, 19 Ind. 401.

We are very clearly of the opinion that the venue was sufficiently proved, which conferred on the court below the power to render the judgment in the case.

It is next contended that the verdict is not sustained by the evidence. We have duly considered and weighed the evidence, which is voluminous, and are entirely satisfied that it fully supports the verdict. The murder was committed in the streets of the city of Indianapolis, in daylight, in the presence of a number of reputable witnesses. It is shown by the evidence that the deceased was the wife of the defendant; that they had for some time previous to the murder lived unhappily together; that the defendant had, previous to their separation, threatened to take her life, and had inflicted great personal violence upon her; that she had become apprehensive that he would kill her, and had abandoned his home, and was residing with a family near the scene of the murder; that after she had abandoned his home, he had frequently said that he would kill her if she did not live with him; that quite early in the morning of the day on which she was killed, the defendant was trying to borrow a pistol, and that a little later in the morning he purchased the pistol with which he shot her; that in the afternoon of said day he went to the house where his wife was staying, and threatened to kill her unless she went home with him; that he took her by force from the house; that when he reached the blacksmith shop at the corner of Meridian and Ray streets, she succeeded in breaking away from him, when he drew his revolver and fired at her three times, when she ran into the shop and fell upon her knees when he went up close to her and fired two shots into her body.

The evidence clearly and conclusively shows that it was a deliberate, premeditated, malicious, and atrocious murder, without excuse, provocation, justification, or even one mitigating circumstance to relieve it of its atrocity and barbarity.

Finally, it was contended that the appellant was, at the time of the homicide, so bereft of reason and judgment as not to be capable of conceiving and executing a design to take life. It was proved upon the trial that the appellant had been, for several years, in the habit of indulging to excess in the use of intoxicating liquors, but the evidence fell far short of showing that the use of intoxicating liquors had so beclouded his intellect and destroyed his reasoning faculties as to render him irresponsible for his acts. The law is stated with great accuracy and precision by Judge HARRIS, in the case of *The People* v. *Rogers*, 18 N. Y. 9, where he says: "No rule is more familiar than that intoxication is never an excuse for crime. There is no judge who has been engaged in the administration of criminal law, who has not had occasion to assert it. Even where intent is a necessary ingredient in the crime charged, so long as the offender is capable of conceiving a design, he will be presumed, in the absence of proof to the contrary, to have intended the natural consequences of his own act. Thus, if a man, without provocation, shoot another or cleave him down with an ax, no degree of intoxication, short of that which shows that he was at the time utterly incapable of acting from motive, will shield him from conviction."

There was also evidence tending to prove that the appellant was intoxicated at the time of the commission of the murder. In the case of *The People* v. *Rogers, supra*, DENIO, J., said:,

"Where a principle in law is found to be well established by a series of authentic precedents, and especially where, as in this case, there is no conflict of authority, it is unnecessary for the judges to vindicate its wisdom or policy. It will, moreover, occur to every mind that such a principle is absolutely essential to the protection of life and property. In the forum of conscience there is no doubt considerable difference between a murder deliberately planned and executed by a person of unclouded intellect, and the reckless taking of life by one infuriated by intoxication; but human

laws are based upon considerations of policy, and look rather to the maintenance of personal security and social order, than to an accurate discrimination as to the moral qualities of individual conduct.    But there is, in truth, no injustice in holding a person responsible for his acts committed in a state of voluntary intoxication.    It is a duty which every one owes to his fellow-men and to society, to say nothing of more solemn obligations, to preserve, so far as it lies in his own power, the inestimable gift of reason.    If it is perverted or destroyed by fixed disease, though brought on by his own vices, the law holds him not accountable.    But if by a voluntary act he temporarily casts off the restraints of reason and conscience, no wrong is done him if he is considered answerable for any injury which in that state he may do to others or to society."

We have thus gone through the entire record, and have considered and weighed every argument that has been presented in behalf of the prisoner, and we have been unable to discover any error of which he has the right to complain. It seems to us that he had a fair and impartial trial in the court below, and that his guilt was fully and satisfactorily established by the evidence; and that as he has shown nothing in justification or mitigation of his conduct, he must suffer the extreme penalty of the violated law.

We think the court below committed no error in overruling the motion for a new trial.

The judgment of the court below is in all things affirmed. The clerk of this court will immediately certify this opinion to the court below.

*E. H. Lamme* and *T. L. Stiles*, for appellant.

*H. C. Guffin*, *R. P. Parker*, and *J. C. Denny*, Attorney General, for the State.