Long *et al. v.* The State.

Filed May 26, 1884.

---

· No. 11,532.

## LONG ET AL. *v.* THE STATE.

CRIMINAL LAW.—*Misconduct of Juror.—New Trial.*—To make the fact available as cause for a new trial, that a juror took notes of the evidence and read them in the jury room, no objection having been made, it must appear that not only the defendant, but also his attorney, was not aware that the juror took notes.

SAME.—*Verdict.—Practice.*—Neither the affidavit of a juror nor his statements can be used to overthrow a verdict.

SAME.—*Supreme Court.—Evidence.*—Where the court below hears evidence on a motion for a new trial on account of the misconduct of a juror, the Supreme Court will not weigh the evidence.

SAME.—*Misconduct of Witness.*—The misconduct of a witness for the State is not cause for a new trial.

SAME.—*Duty and Conduct of Judge.*—A judge presiding at a criminal trial is not a mere moderator, but has active duties to perform, without partiality, in seeing that the truth is developed, and to that end he may put proper questions to witnesses.

SAME.—*Evidence.*—It being a question whether the defendants were present when the shots were fired, evidence that one of them was shortly after seen not far away getting over his back fence, and being asked what was the matter, said, "It's Dave and S.," the name of the party into whose house the shots were fired, is proper as against himself.

SAME.—*Instructions.*—The giving by the court to the jury of forms of verdict applicable in case of conviction, none being asked or given applicable to acquittal, is not error.

VOL. 95.—31

SAME.—*Assault and Battery.—Harmless Error.*—Upon an indictment for assault and battery, with intent to commit murder in the first degree, the jury so found, assessing the lowest penalty allowed by section 1909, R. S. 1881.

*Held,* that an erroneous instruction, defining the case proved as evincing an intent to commit murder in the first degree, instead of an intent to commit manslaughter, was harmless.

From the Shelby Circuit Court.

*J. C. Hart, E. K. Adams* and *L. J. Hackney,* for appellants.

*F. T. Hord,* Attorney General, *F. S. Staff,* Prosecuting Attorney, *A. F. Wray, B. F. Love, D. L. Wilson, A. Major, H. C. Morrison* and *W. B. Hord,* for the State.

ZOLLARS, J.—In September, 1883, a ball, fired from a gun or pistol, entered the house of Samuel H. Saulsberry, and wounded his child. As the authors of the injury, appellants were tried, convicted and sentenced to an imprisonment of two years, upon an indictment which charged them with assault and battery with intent to kill and murder.

Two of the causes urged for a new trial below, and upon which appellants' counsel lay much stress here, are that one of the jurors took notes of the evidence, and used them in the jury room in influencing the jury. These questions were presented by affidavits and an oral examination of the juror. The affidavit by appellants was, that, without their knowledge or consent, the juror made notes of the evidence adduced upon the trial, and, while the jury were deliberating upon their verdict, read said notes to them, and that the notes so made were thus used to the injury of appellants. It is not developed in this affidavit by what means, or from what source, appellants learned that the notes had been thus used, or that they had been so taken by the juror.

To meet this affidavit were the affidavit and oral examination of the juror, and some of his associates. In these the accused juror stated that without any objections from the court or the parties he made notes of some points of the evidence in his own words, neither preserving the names nor language

of the witnesses; that he did not read any of the notes to his fellow jurors, and that they neither read, considered, nor referred to such notes, nor any others.   He stated that on one or two occasions, when the jurors were talking of the evidence, he looked over a part of his notes to see if they agreed with the recollections of the other jurors and his own, as to what the evidence on certain points had been; that he made no statements of any kind to the other jurors in relation to the notes, and that his verdict was not at all influenced by the notes, but that he relied upon his memory independent of them.

Another juror, in an affidavit filed below, stated that the jury neither read nor heard read notes of the evidence taken by any juror, or any other person, and that the verdict of the jury was based wholly upon their recollection of the evidence, unaided by any kind of notes.

Did then the taking of notes of the evidence by the juror, under the circumstances, vitiate the verdict?

We are cited by counsel for appellant to the following cases:  *Newkirk* v. *State,* 27 Ind. 1; *Eden* v. *Lingenfelter,* 39 Ind. 19; *Lotz* v. *Briggs,* 50 Ind. 346; *Nichols* v. *State, ex rel.,* 65 Ind. 512; *Cheek* v. *State,* 35 Ind. 492.

In the first of the above cases, the judgment was reversed, because, without consent of the parties, the jury, after they had retired to deliberate upon their verdict, requested and received from the bailiff a volume of Bishop's Criminal Law, from which counsel had read on the argument.

In the others, except the last, it was held error for the court to allow the jury, over the objections of a party, to take to their room documentary evidence.

In the last case, two of the jurors, over the objections of the defendant, and after the court told them they must not do so, persisted in writing down notes of the evidence.

It will be observed that in the first of the above cases the misconduct of the jury was such that the defendant could not object, because not present, and that in the others the misconduct was over the objections of the party complaining.

If that complained of as misconduct had been with the knowledge and consent of the parties, or with their knowledge and without objection, it would not have been available error for the reversal of the judgments. *Chuck* v. *State,* 40 Ind. 263. Does it sufficiently appear in the case at bar that the juror made the notes of the evidence, and took them to the jury room, without the knowledge and consent of appellants?

Appellants in their affidavit state that it was done without their knowledge and consent, but it is not in any way made to appear that it was without the knowledge and consent of their attorneys. The record shows that their attorneys were present, conducting their defence from the inception of the trial to the final judgment. If the attorneys had such knowledge, that knowledge must be imputed to appellants. It would hardly do to hold that verdicts may be overthrown, because a juror may take notes of the evidence without the personal knowledge of a party, although his attorneys may all the while have full knowledge, and make no objection, either to the taking of the notes, or the taking of them to the jury room. The only reasonable and safe practice in such cases is to hold the party bound by the knowledge, omissions and acts of his attorney. The necessity of such a rule must be apparent. The purpose of the employment is that the attorney may watch and guard the rights of the party in the progress of the cause. The attorney, with his experience and knowledge of court affairs, will detect what would not be observed by the party. It is difficult to understand how a juror could take notes of the evidence in a case without detection by the attorneys.

Our views are fully sustained by the case of *Eastman* v. *Wight,* 4 Ohio St. 156. In that case a new trial was asked because of the incompetency of one of the jurors. In support of the motion, the party filed his affidavit that he had no knowledge of such incompetency during the trial. There was nothing to show that his attorney did not have such knowledge. The new trial was denied. The Supreme Court held that it

was correctly denied, on the ground that the knowledge of the attorney is the knowledge of the party, and that the want of knowledge on the part of the attorney must be made to appear affirmatively. The same rule was applied to a criminal case. *Parks* v. *State,* 4 Ohio St. 234. See *Achey* v. *State,* 64 Ind. 56. The same rule has been applied in Massachusetts. *Kent* v. *City of Charlestown,* 2 Gray, 281; *Orrok* v. *Commonwealth Ins. Co.,* 21 Pick. 456. Other cases from other States might be cited.

In the case in hearing there is nothing to show a want of knowledge on the part of appellants' attorneys of the conduct of the juror. If we are correct in our holding, that the knowledge of the attorney is the knowledge of the party, it results that the want of such knowledge must be affirmatively shown, as well as the want of personal knowledge by the party. To adopt a contrary rule would surround jury trials with uncertainty and hazard by enabling parties to experiment with juries and courts. In support of the verdict, therefore, we must presume, in the absence of a showing to the contrary, that appellants' attorneys had knowledge of the fact that the juror made notes of the evidence, and took them to the jury room, and made no objections. Where there is knowledge and no objections, in such a case, consent will be presumed. *Cluck* v. *State,* 40 Ind. 263. Under the circumstances of this case, the fact that the juror looked over portions of his notes once or twice in the jury room is not such an error as would justify a reversal of the judgment.

It is clearly stated in the affidavits of Duval, the juror who took the notes of the evidence, and another juror, that none of the jury, except Duval, in any way consulted the notes in the jury room, or even saw them.

It is also stated that, in arriving at a verdict, the jury relied wholly upon their memories as to what the evidence was, and were in no way influenced by the notes. The only thing in any way in conflict with this is the affidavit of one of appellants' attorneys, in which he states that one of the jurors

told him that Duval read from his notes to one or two of the jury.

The law is well settled that the affidavits of jurors may be used to support and uphold the verdict, but not to overthrow and destroy it. This being so, it follows that what any juror may say can not be used to overthrow the verdict. *Stanley* v. *Sutherland,* 54 Ind. 339; *Withers* v. *Fiscus,* 40 Ind. 131 (13 Am. R. 283); *Haun* v. *Wilson,* 28 Ind. 296; *Hughes* v. *Listner,* 23 Ind. 396; *Jones* v. *State,* 89 Ind. 82.

Another rule is also well settled, viz.: Where a motion for a new trial is based upon the alleged misconduct of jurors, and the trial court hears evidence, either orally or by affidavits, touching such misconduct, its conclusions will not be disturbed by the Supreme Court on the weight of the evidence. *DePriest* v. *State, ex rel.,* 68 Ind. 569; *Holloway* v. *State,* 53 Ind. 554.

Another general rule is that the misconduct of the jury must be gross, and clearly appear to have injured the complaining party, to justify the granting of a new trial. *Ball* v. *Carley,* 3 Ind. 577; *Bersch* v. *State,* 13 Ind. 434; *Harrison* v. *Price,* 22 Ind. 165; *Whelchell* v. *State,* 23 Ind. 89; *Flatter* v. *McDermitt,* 25 Ind. 326; *Medler* v. *State, ex rel.,* 26 Ind. 171; *Achey* v. *State,* 64 Ind. 56; *Carter* v. *Ford Plate Glass Co.,* 85 Ind. 180.

The fifteenth cause assigned in the motion for a new trial is stated as follows: "Misconduct of the plaintiff by her witness, Samuel Douthett, in concealing from the defendants important evidence in their behalf, and in intimidating Nathan Young, a competent and important witness for defendants on the trial of said cause, as shown by the affidavits of James Young and Nathan Young filed herewith." This presents no question for the consideration of the court. Douthett was not even the prosecuting witness, as that term is ordinarily used. The prosecuting attorney is the representative of the State in such State prosecutions. By his acts and wrongs in such cases, the State will be bound, but it is not

bound or chargeable with the wrong and misconduct of its witnesses. Besides, in this case, the affidavits of the Youngs charging wrong upon Douthett, are squarely contradicted by him. These affidavits presented an issue for the decision of the court below. With that decision we can not interfere. *DePriest* v. *State, ex rel., supra; Holloway* v. *State, supra.*

Another reason assigned for a new trial, and urged upon our attention, is that the court erred in asking a question of Addie Surrier, one of the State's witnesses. After this witness had testified that she was at her mother's gate across the street from Saulsberry's at the time of the shooting, and saw a person running west just after the shooting, and that she could not say who it was, the court asked her this question: "At the time you saw that person running, and not from what you have heard, did you think it was Dave Long?" To which the witness answered: "I took it to be Dave Long at the time. I could not say for certain who it was now; the man was running fast," etc.

It was not an available error for the court to put the question in the leading form. Counsel argue with much earnestness that the question by the court should have been limited to the time when asked, and should not have inquired as to what the witness thought at the time she saw the man running; and that the question indicated to the jury that the court thought that the defendants were guilty, and should be convicted.

For the purpose of testing the witness, and getting at the truth, we think that the court had the right to ask her what her impressions were at the time. The theory of the defence was that appellants were not at or near Saulsberry's house, and hence did not do the shooting. The question by the court was to throw light upon that disputed fact. It is the duty of the presiding judge to see that the truth is developed, and for this purpose he has the right to propound proper questions to witnesses. Of course, he should scrupulously avoid all semblance of partiality. There was nothing in

the question, we think, to in any way indicate to the jury that the judge had either any opinion or wish in the matter. It should be observed, too, that the answer of the witness was not such as to materially affect the case either way.

W. C. Davis, a witness for the State, testified that he lived two hundred yards north from Saulsberry's house, and heard the shots. After hearing screams he started in the direction of Saulsberry's house. When he had reached the corner of the lot upon which appellant George Long lived, he saw him getting over the fence back of his house, and asked him what was the matter, to which Long answered: "It's Dave and Saulsberry." The question seems to have been asked and answered without objection from the defendants. Following the answer they moved to strike it out.

We think the question and answer were both competent and proper. The answer, perhaps, would not bind the other defendant, if "Dave" referred to him. If a question and answer are competent as to one of the defendants, they can not be struck out because they may be incompetent as to the other. In such case the answer must stand, and should be limited to the one defendant by a proper instruction. And in such case, if the party wishes the answer so limited, he should ask for such an instruction. *Elliott* v. *Russell,* 92 Ind. 526. As to George Long, his answer showed that he had knowledge of the affair, and tended, in a slight degree at least, to show that he was present at Saulsberry's house at the time of the shooting as one of the parties.

In charging the jury the court submitted forms of verdict to be used in case they found the defendants guilty, but submitted no form to be used in case the jury found them not guilty. It is contended that this omission indicated to the jury that the court believed the defendants guilty, and wished them convicted; that the jury so understood it, and were influenced by it.

The affidavit of jurors *pro* and *con* were filed. As said before, the affidavits of jurors can not be used to overthrow

their verdict. If appellants wished an additional form of verdict submitted to the jury, it was their duty to have prepared one and asked the court to submit it. When a party thinks that additional instructions should be given, he should ask them to be so given. *Powers* v. *State,* 87 Ind. 144; *Hodge* v. *State,* 85 Ind. 561.

It is contended further that the fifth instruction given by the court was erroneous. It is said by counsel: " We think in the case put by the court with this (our statute) in view, the defendants could not have been found guilty of an assault and battery with intent to commit murder in the first degree; it could only have been with intent to commit manslaughter."

We need not set out the instruction, nor extend this opinion in a discussion of the point made by counsel, as the error, if an error be conceded, was and is entirely harmless to appellants. They were given the shortest sentence known to the statute. Section 1909, R. S. 1881. Hence, whether the jury convicted them of an assault and battery with intent to commit murder, or manslaughter, can make no possible difference to them. *John* v. *Clayton,* 1 Blackf. 54; *Taylor* v. *State,* 49 Ind. 555. Upon the question discussed by counsel, see *Walker* v. *State,* 8 Ind. 290. Under the indictment charging them with assault and battery with intent to commit murder, they might be convicted of a like assault and battery with intent to commit manslaughter. *State* v. *Throckmorton,* 53 Ind. 354.

Lastly, we are asked to reverse the judgment upon the weight of the evidence. We have examined the evidence, and find the case to be just such an one as calls for the application of the rule so often announced, that this court will not reverse a judgment upon the weight of the evidence, where it tends to sustain the finding or verdict, and where it is conflicting. The reason of the rule is apparent to any one upon a moment's thought. It was very well and forcibly stated in the case of *Cox* v. *State,* 49 Ind. 568.

The evidence in the case before us is in sharp conflict on

some points.   The jury and the trial court had the witnesses before them, and hence had the means of judging of the weight that should be given to the testimony of each particular witness, which it is impossible for us to have.   This court has more than once announced that the rule is not for the trial courts.   This is manifest, because the reasons for it do not exist there.   It is true the Constitution gives to the jury in criminal cases the right to determine the law and the facts, but it does not follow from this that, in ignorance, they may trample the law under their feet, or from mistake, bias or prejudice, disregard the facts.   The trial judge does not preside simply as a moderator; it is his duty to charge the law, and see to it that proper heed is given by the jury..   It is equally his duty to see to it that the laws are rigidly enforced against the guilty, and that in no case shall an innocent person suffer.   Such also is the duty of this court.   From that duty it will in no case shrink or turn aside.   This court, however, is a court for the correction of errors, and before we can pronounce judgment, overthrowing the judgments of the lower courts, the error must be made to affirmatively appear by the record.   As has already been said, it is difficult for us to know and judge of the weight of the evidence, for the reason that it is impossible to put into the record the manner and conduct of the witnesses, and the many indices of truth and falsehood that often accompany the delivery of the testimony by the witnesses.

After a careful examination of the record, we find no error for which the judgment should be reversed; it is, therefore, affirmed, with costs.

Filed May 27, 1884.