Gorman, J.
On motion for new trial.
This action was brought in 1906 and was on trial in this court from April 29 to May 18, 1910, continuously, except Saturdays and Sundays. On May 18, the jury brought in a verdict against the defendants for $13,200, about one-half the amount claimed by the plaintiff in its petition.
The petition set .out some thirty-five causes of action, each -of..the same .general character, but differing in the amounts *354 sought to be recovered and the times when the claims arose, and in some of the facts and circumstances connected with the various transactions. In general, the plaintiff, after alleging its corporate existence and the partnership of the defendants, set out that Silas P. Snodgrass was its secretary and man to make estimates on mill work, which plaintiff was engaged in manufacturing and selling, and-to make contracts for the sale of said mill work on its behalf; that Levi P. Hazen & Co., during the years from 1901 to 1906, were general contractors engaged in the erection of large buildings, dwelling-houses and other structures, requiring for their construction mill work; that by fraudulent collusion and agreement between Snodgrass and Hazen & Co., it was agreed that Snodgrass was to furnish and deliver and contracted to do so on behalf of his own company, the plaintiff, the mill work needed by Hazen & Co. on a great number of jobs or buildings which L. P. Hazen & Co. erected between 1901 and 1906 inclusive, at prices greatly below its true or actual value, and that by fraud and collusion between Snodgrass and the Iiazens, it was agreed that Snodgrass was to be paid by the Iiazens a part of the difference in money between the true value of the mill work and the fraudulent prices at which Snodgrass agreed to furnish it from his own company; that in pursuance of said corrupt and fraudulent agreement, Snodgrass, the estimator and secretary for the plaintiff company^ did during the years 1901 and 1906 inclusive, furnish and deliver at prices-far below its true value, mill work from the plaintiff company, to L. P. Hazen & Co., on some thirty-five or forty buildings which the defendants, L. P. Hazen & Co., erected during said years, and was paid by L. P. Hazen & Co., for so doing, large sums of money from time to time, in the aggregate of about $13,000, and that L. P. Hazen & Co. profited by these transactions in a sum at least equal to the amount paid to Snodgrass in the way of receiving the mill work from the plaintiff company through the corrupt bargain with Snodgrass at prices much below its true value; that the officers and stockholders of the plaintiff company other than Snodgrass were wholly ignorant of this corrupt and fraudulent scheme to cheat and defraud the plaintiff company, and did not discover -the fraud until a short time before the commencement of this action.
*355 The plaintiff prayed for a judgment against L. P. Hazen & Co. and Silas L. Snodgrass for the sum of $26,000, which sum, it averred, represented the difference in value of all the mill work furnished to Hazen & Co., in pursuance of said corrupt bargain, and the amount which it received for the same from Hazen & Co. under the fraudulent contracts made on its behalf by Snodgrass acting corruptly and in fraudulent collusion with L. P. Hazen & Co.
The defendants, L. P. Hazen & Co. and Silas L. Snodgrass, filed a general denial to the petition, admitting however the corporate existence of plaintiff, the partnership of Levi P.. Hazen' and Alexander T. Hazen, and that Snodgrass was during the times stated the secretary of plaintiff company; and the defendants went to trial on these pleadings.
During the progress of the trial, the defendants, Levi P. Hazen and A. T. Hazen, asked and obtained leave of the court to file an amended answer, over the objections of counsel for plaintiff, setting up in substance, that during the aforesaid years, from 1901 to 1906 inclusive, there existed in Hamilton county, Ohio, an illegal association of planing mill, men known as the Hamilton County Planing Mill Association, whose purpose and object was to inflate the price of mill work so that the consumers and purchasers of mill work would be required to pay to the members of the association very much higher prices than the real or true value of mill work] that the plaintiff company during all these years was a member of said illegal association, and that the effect of such an association in and about Cincinnati and Hamilton county was to inflate and largely increase the market prices of mill work; that the prices at which Snodgrass sold plaintiffs mill work.to the defendants, L. P. Hazen & Co., were the fair prices and true value .of said mill work, and that the fair market value of the mill work during those years was affected by the actions of said illegal association. To this amended answer the plaintiff replied by general denial.
A motion for a new trial was filed by both L. P. Hazen & Co. and Silas L. Snodgrass within the statutory time (three days) and an amended motion for a new trial seven days after the verdict.
*356 As to the amended motion for a new trial, the grounds therefor not being newly-discovered evidence, and having been filed out of time the grounds thereof can not be the basis for a new trial and the same will be ignored.
Furthermore there is nothing in the record to show that any such things occurred as is claimed in the ground set out in the amended motion, to-wit: that there was irregularity in the proceedings of the court in having the assistant prosecutors of Hamilton county, Denis F. Cash and John W. Weinig, in the court room during the testimony of L. P. Hazen and Silas Snodgrass, taking notes on the testimony of said witnesses in the presence of the jury and sometimes conferring with the court in reference thereto. Nothing of this kind occurred. If the assistant prosecutors of the county were present in the court room during the testimony of Hazen and Snodgrass they were there on their own volition, and not at the court’s request, nor did either of them confer with the court during the hearing of the testimony of these two men, although it is not unlikely that these two men had good reason to believe that they had good grounds for wanting to know as prosecuting attorneys what they were testifying to on the trial of this case. The courts are open to every one and trials must be public. Mr. Cash and Mr. Weinig are reputable attorneys at this bar and officers of the county, sworn to prosecute and ferret out crime and wrong-doing. Whether as officers of this county or as members of this bar or as citizens of this county and state, they had as much right to be in the court room at the times it is claimed they were here as counsel for the defendants or his clients.
It is a strange and novel proposition that the prosecuting'attorney or his assistants may not be present in the court room during the testimony of parties to a case, either on the invitation of the court or on their own volition, lest perhaps the jury may be affected by their presence or a witness’ credibility suspected. If their presence would have the effect of eliciting the truth, the whole truth and nothing but the truth from witnesses, it would greatly aid in the administration of justice to have the .public prosecutor or one of his .assistants always present during the hearing of the testimony of witnesses. Besides both Mr. Cash *357 and Mr. Wéinig, in affidavits filed herein, deny the charge made in this amended motion for a new trial, and even if it had been incorporated in the original motion, as was said before, there is nothing in the record to show that such a thing occurred, nor can it be substantiated outside of the record.
As to the motions for a new trial, Silas L. Snodgrass’ counsel did not argue his motion, but sets out all the grounds enumerated in the statute except that of newly-discovered evidence.
L. P. ITazen & Co., through their counsel, also set out all the statutory grounds for a new trial except that of newly-discovered evidence, but on the presentation of the motion no ground for a new trial was urged except irregularities in the proceedings of the court: First, in commenting upon the testimony of witnesses for the defendants' in the presence of the jury in a manner calculated to make the jury disbelieve said witnesses, including comments upon the testimony of witness L. P. Hazen for the defense, of a nature to impair his credibility with the jury; second, committing him to jail for contempt because his answer to a certain question was, that he could not recollect; third, in addressing remarks directly to the jury of a nature calculated to prejudice the case of the defendants in the minds of the jury; fourth, and in oftentimes looking at the jury and smiling when evidence was being put in by the defense which the court did not itself believe.
The affidavit of Levi P. Hazen is filed in support of these charges of the irregularities of the court, but in so far as the matters set out in his affidavit are taken from the record.of the case as shown by the stenographer’s notes, no affidavit is necessary, and as to those matters not taken from the record, but set out in the affidavit, it is the opinion of the court that nothing is added to their weight by reason of the fact they appear to have vbeen made under oath by Levi P. Hazen.
As to the first complaint of the court’s conduct, that he commented upon the testimony of witnesses, including that of Levi P. Hazen, during the progress of the trial, the court’s attention has not been called to any such comments, either by a reference to the record or in the affidavit of Levi P. Hazen, except the comments upon the testimony of Silas L. Snodgrass, one of the *358 defendants. The court has no recollection of commenting on the testimony of Levi P. Hazen, and onr attention, as we have said, has not been called to any comments on his testimony.
As to what was said concerning the testimony of Silas L. Snodgrass, the court is of the opinion that nothing that he could have said in the presence and hearing of the jury would tend to discredit him, after the shameful exhibition he made of himself in the presence of the jury in his panicky efforts to evade, and avoid answering questions. No juror with the' least instinct of honesty would have credited Snodgrass’ testimony, when he admitted having been paid thousands of dollars by Levi P. Hazen & Co., during all of which time he was drawing a large salary from his own company, the Morrison & Snodgrass Co., and acting as its secretary, and being paid by it for devoting his entire time and best energies to the successful prosecution of its business, and yet he could not remember or recollect why Levi P. Hazen & Co. had paid him these large sums. He said repeatedly that it was for services, or it might have been for services, and when asked, what services, he would not tell, but said, I don’t recollect or don’t remember. More than a score of times he so answered when it was palpable to a mere tyro that his answers were not truthful, and that he gave the only answers he could have given, unless he had answered truthfully and told that the moneys were given to him by Levi P. Hazen & Co. as bribes to betray his own company and his fellow stockholders into the hands of Hazen & Co. It is inconceivable that any judge with the least feeling of responsibility for his position, or a decent regard for truth and justice, could have sat within the hearing of this party to this suit, testifying as a witness in his own behalf and on behalf of his fellow conspirators, and not made an effort to prevent the desecration of the temple of justice by the continued and continuing shameful spectacle of a shameless man undertaking to hoodwink justice and apparently laughing in his sleeve because he appeared to know that so long as he said “I don’t recollect,” or “I don’t remember,” he could not be in contempt for failure to answer, however obvious it might have been that his answers were not candid, sincere or truthful. I may say in this connection that so long as I occupy a position on *359 this bench, and cases are tried before me, when a witness or a party testifying is obviously testifying to that which is not true, the court will use every honorable and fair means to ascertain the truth and prevent false testimony in the case.
It was after this witness had repeatedly said that he might have been paid by Hazens for something, that the court, out of all patience with such trifling with the court, jury and counsel, said “It is trifling with the jury and the court to say such things,” etc., and again when he had answered that he might have been paid for this or for that, or it might have had something to do with this matter or that, the court said: “It might
have had something to do with the King of Timbuctoo, ’ ’ because the answer of the witness was just as irrelevant as the remark the court made that, “If this man got money on the outside, when he was employed exclusively by the Morrison & Snodgrass Co., and was an officer of the company, as an honest man, he ought to be able to tell what he got the money for. ’ ’
The only other occasions on which the court said anything while this witness was on the stand, was to interrogate him two or three times in an effort to get him to answer questions, when he was manifestly evading answering and resorting to subterfuge in his answers.
As to commenting on the evidence of witnesses, we know of no rule of law which forbids the court to do so, especially if the comments have not prejudiced the jury against either party. See Krapp v. Hauer, 38 Kan., 430; Chicago R. R. Co. v. McLaughlin, 146 Ills., 353.
Of course, if the court’s comments are of such a nature as that an ordinary juror would be prejudiced or influenced against a party, or if his remarks were intended to and naturally would discredit an otherwise apparently fair witness, there can be no doubt that this would be good grounds for setting aside the verdict, unless it was apparent that the verdict was in accordance with substantial justice.
As to interrogating .the witnesses, there is no rule of law nor any statute which makes it error. A judge presiding at the trial of a jury case is not a mere umpire of a game of ball, to call balls and strikes, nor is he a mere moderator between contend *360 ing parties, but he has active duties to perforin in maintaining justice and in seeing that the truth is developed, and he may for-such purpose put proper questions to the witnesses, and even leading questions. Lefever v. Johnson, 79 Ind., 554; Long v. State, 95 Ind., 481; Huffman v. Benore, 85 Ind., 591; Bowden v. Echor, 95 Ga., 243; Clark v. Phelps, 35 Kan., 43.
As to the action of the court in committing Levi P. Hazen for contempt, and the claim that this act of the court prejudiced his cause in the minds of the jury, it would appear that if he had sat or stood mute and not answered the question, there would or could be no claim made of the want of power in the court to commit him to jail as for a contempt, and this would and should be done in the presence of a jury. The court in such case would not be obliged to send the jury out of the court room before committing a recalcitrant or contumacious witness for contempt. If, in other words, the witness had been guilty of contempt, and he happened to be one of the parties and was committed for the contempt in the presence of the jury, could it be claimed that this act so prejudiced the jury that the party so committed and prejudiced should have a new trial on that account ? Surely not. This would be a ridiculous claim, because in every case where a party to the suit was guilty of contempt and committed for the offense, the court would on that account be obliged to give him a new trial. The guilty party in such cases would always be benefiting by his own wrong-doing.
Now, if the party is not guilty of contempt, but the court believes him to be and commits him therefor, and he is subsequently released on habeas corpus by a higher court, wherein is he prejudiced before the jury? Has not the court’s action rather made a martyr of him in the eyes of the jury, and instead of prejudicing his cause would not the jury’s sympathies be naturally and ordinarilyj aroused in his favor, especially if the jury felt or believed that he was an honest, well-meaning witness and party? It is quite probable that Hazen expected this result from the court’s action, and that he and his counsel are disappointed and chagrined that the jury did not see the incident in the same light that they thought they saw it.
From the conduct and testimony of Hazen and his interest in the case it is not improbable that he welcomed the commit *361 ment of the court, and his subsequent release, as a circumstance which he may have believed would lead the jury to return a verdict in his favor. There appeared to be as much of a studied effort during the trial to try the court as to try the case, to see how much error could be gotten into the record for the purpose of predicating a new trial on these errors.
It is true the circuit court has held that Hazen’s answer "I don’t recollect” or "I don’t remember” to questions which it was obvious he could have answered, did not constitute contempt; but, nevertheless, this court is of the opinion that’ if the circuit court could have had before it Levi P. Hazen’s entire testimony, including his testimony taken in the deposition in another case which had been read before he took the stand in his own behalf, the learned circuit court would have held as did the United States Circuit Court of Appeals for the Second Circuit of New York in the case in 177 Fed. Rep., 191 (In re Schulman et al), Judge Coxe announcing the opinion, that where a bankrupt in his examination under oath concerning his property, answers "I don’t remember,” he evinces a deliberate purpose to conceal the truth and can be punished as for contempt of court in refusing to answer. The court in that case commenting on the witness’ answer says:
"His answers, ‘I don’t remember,’ and ‘what do you mean?’ so often given, might in some instances have been the result of a defective memory or an honest inability to understand. An appellate court may be unable to detect under such conditions, the false from the true, the honest from the fraudulent, but an intelligent person observing the witness for hours on the stand could not be deceived as to his purpose. When, therefore, he answers repeatedly ‘I don’t remember,’ it is obvious that he was deliberately withholding information to which the trustee was entitled. In effect his attitude was one of defiance. He did not affirmatively tell the referee that he refused to disclose the facts which would enable the trustee to follow the property although these facts were well known to him but his conduct produced the same result as if he had stated his purpose openly. ”
Applying the reasoning of the learned court in the case just cited to Levi P. Hazen’s conduct, can it be doubted by anyone who heard his testimony and his deposition, that his conduct as *362 shown by his disingenuous and evasive answers to numerous questions as to why he had paid Snodgrass these various large sums of money from time to time, produced the same result as if he had refused to answer, when he answered “I don’t recollect,” or ' ‘ I don’t remember ” ?
If Hazen’s case was prejudiced by anything that the court did or said he brought it on himself by his own conduct in assuming an attitude of defiance toward the court and jury. He and Snodgrass were a pair of the same kind, and what has been said of Snodgrass is equally applicable to Levi P. Hazen. Men whowould deliberately plot and conspire to cheat and defraud would not hesitate to commit the lesser offenses of falsification, concealment and evasion to prevent being found out.
A jury of babes would not have been deceived by the testimony of these two. It may be that Hazen and Snodgrass fondly hoped, as the ostrich thinks when he sticks his head into the sand, that he is completely concealed, that by their evasive and equivocating answers they were misleading the court and jury and covering up their tracks.
As to the charge that the court, during the trial of the case, addressed remarks directly to the jury calculated to prejudice the case of the defendants in the minds of the jury, it is to be said that there is no foundation for this charge, nor will the record disclose any such remarks made to the jury.
As to the last charge, that the court oftentimes tried to influence the jury by smiling and looking at the jury when evidence was being put in by the defense which the court itself did not believe, it should be a sufficient answer to say that the charge is beneath the notice of the court and too contemptible to deserve mention. However, if counsel for the defendants observed any conduct of this kind in court, he observed something that the court is entirely unconscious of, and does not believe occurred.
Many authorities have been cited by counsel for Levi P. Hazen & Co., to show that the irregularities in the proceedings of the court may consist in making remarks in the presence and hearing of the jury calculated to prejudice the jury against one or the other of the parties, and that where it appears that the acts and conduct of the trial court tended to influence or prejudice the jury against the losing party, a new trial should be granted. *363 This is undoubtedly a sound proposition of law, because the court has no more right to prejudice a litigant’s cause than has the prevailing party or his counsel; but in the ease at-bar, the court has endeavored to look at the entire record of the trial in as impersonal a way as it was possible to do in view of the personal charges made against the court by counsel for the defendants, Hazen & Co.
Looking at the record and proceedings of the trial, the court, is unable to see how anything that he did or said could have prejudiced the defendants’ case. The court did only what he had a legal right to do, and what he still believes it was his duty to do because of the bad conduct and disingenuous and evasive answers of the two defendants, Hazen and Snodgrass, not their witnesses, and if the cause was prejudiced in the minds of the jury, they themselves aroused that prejudice and they must suffer the consequences and not seek through their counsel to east aspersions and blame upon the court. A gray wolf when trapped, always shows his teeth and endeavors to bite.
Section 5115, Revised Statutes, provides ■ that the court at every stage of the action must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party.
There are numerous authorities to support this rule of law, and numerous instances wherein the court- has applied this rule in this state. See Baird v. Telephone Co., 10 C. C.(N.S.), 163; Berry v. State, 31 O. S., 219; McHugh v. State, 42 O. S., 154; Traction Co. v. Sterling, 9 C.C.(N.S.), 200.
In conclusion the court is of the opinion that substantial justice has been done the defendants in this ease by the jury, or would have been done if the verdict had been several thousands of dollars greater than it is, in favor of the plaintiff; and if there were as many errors in the case as there are holes in a skimmer, nevertheless those errors are not prejudicial, so long as the verdict is substantially as it should be and in accordance with the law and the evidence. Upon a review of the whole case the court has no doubt of the correctness and justice of this verdict, and it will not be disturbed.
The motion for a new trial will be overruled.